RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 07a0325p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

THOMAS ALBERT NICHOLS,

*Petitioner-Appellant,*

v.

No. 05-6452

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 05-00246—Thomas A. Wiseman, Jr., District Judge.

Submitted: July 26, 2007

Decided and Filed: August 16, 2007

Before: KEITH, MOORE, and COLE, Circuit Judges.

_____

**COUNSEL**

**ON BRIEF:** William Cohen, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellee. Thomas Albert Nichols, Pine Knot, Kentucky, pro se.

_____

**OPINION**

_____

KAREN NELSON MOORE, Circuit Judge. Petitioner-Appellant Thomas Albert Nichols ("Nichols") appeals from the district court's judgment denying his motion to vacate his sentence pursuant to 28 U.S.C. § 2255. Nichols argues that his counsel was constitutionally ineffective for failing to challenge enhancements to his Guidelines range. Nichols argues that, based on *Apprendi v. New Jersey*, 530 U.S. 466 (2000), his counsel should have raised a Sixth Amendment challenge to the sentencing enhancements, even though Nichols was sentenced in 2002, more than two years before the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005). Because *Apprendi* cast the constitutionality of the Federal Sentencing Guidelines into considerable doubt, and because the enhancements to Nichols's Guidelines range directly presented circumstances that were called into question by *Apprendi*, we conclude that Nichols's counsel was constitutionally ineffective for failing to preserve a Sixth Amendment challenge to his sentence, and we therefore **REVERSE** the judgment of the district court, **VACATE** Nichols's sentence, and **REMAND** the case for resentencing.

1

## I.  BACKGROUND

On May 23, 2002, Nichols was convicted by a federal jury on one count of bank extortion involving the use of a dangerous weapon, in violation of 18 U.S.C. § 2113(d), and one count of bank extortion involving forcing a victim to accompany a robber, in violation of 18 U.S.C. § 2113(e). The Guidelines range recommended in the Presentence Report ("PSR") included enhancements for taking the property of a financial institution, the amount of loss, use of a firearm, abduction of a victim, vulnerability of a victim, and use of a child in the course of the offense, in addition to a base offense level of twenty, for a total offense level of forty. Combining Nichols's total offense level of forty with his criminal history category of IV, the recommended Guidelines range in the PSR was 360 months to life in prison. In a sentencing memorandum filed October 2, 2002, Nichols objected to each of the recommended sentencing enhancements as unwarranted in his case and argued for a downward departure from the applicable Guidelines range. The district court adopted the Guidelines range as calculated in the PSR and, on October 11, 2002, sentenced Nichols to 405 months in prison, five years of supervised release, and restitution in the amount of $851,000.

Nichols appealed, challenging only the district court's jury instructions. Finding no reversible error in the instructions, we affirmed Nichols's conviction and sentence. *United States v. Nichols*, 100 F. App'x 524 (6th Cir. 2004).

On March 22, 2005, Nichols filed a motion to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255, arguing that his counsel was ineffective for failing to challenge the indictment against him and for failing to argue that the enhancements to his then-mandatory Guidelines range violated the Sixth Amendment, as was later decided by the Supreme Court in *Booker*. The district court dismissed Nichols's motion, concluding that the indictment was not deficient and that *Booker* did not apply retroactively on collateral review. The district court denied Nichols a certificate of appealability on both issues, but a judge of this court granted Nichols a certificate of appealability on the sentencing issue.

## II.  ANALYSIS

### A.  Standard of Review

"We review de novo claims of ineffective assistance of counsel because they are mixed questions of law and fact." *United States v. Wagner*, 382 F.3d 598, 615 (6th Cir. 2004).

### B.  Ineffective Assistance of Counsel

Claims of ineffective assistance of counsel are analyzed under the familiar two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). "First, the defendant must show that counsel's performance was deficient." *Id.* at 687. "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.*

#### 1.  Deficient Performance

Nichols argues that his counsel performed deficiently by failing to argue at trial and on direct appeal that the enhancements to his then-mandatory Guidelines range violated the Sixth Amendment. To show that his counsel's performance was deficient, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "[T]he defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688.

In *Booker*, the Supreme Court reiterated that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by

a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Booker*, 543 U.S. at 244. Under the Sentencing Reform Act of 1984, the Federal Sentencing Guidelines were "mandatory and binding on all judges," *id.* at 233, and judges often increased a defendant's mandatory Guidelines range based on facts not admitted by the defendant or proved to a jury beyond a reasonable doubt. The Supreme Court reasoned that, because the Guidelines were mandatory, such increased sentences based on judge-found facts violated the Sixth Amendment right to a jury trial, as the increased sentence exceeded the maximum authorized by the jury verdict. *Id.* at 245. Accordingly, the Court excised those sections of the Sentencing Reform Act that made the Guidelines mandatory, thereby rendering the Guidelines advisory. *Id.* at 245-46.

Therefore, had Nichols been sentenced according to mandatory Guidelines after *Booker* was decided, his claim clearly would be meritorious. The district court increased Nichols's Guidelines range based on judge-found facts—for example, the two-point enhancements for vulnerability of a victim and use of a child in the course of the offense, both based solely on judge-found facts, increased Nichols's Guidelines range from between 262 and 327 months in prison to between 360 months and life in prison. *See* U.S. SENTENCING GUIDELINES MANUAL ch. 3, pt. A. (2001). The district court applied as mandatory Nichols's Guidelines range of 360 months to life in prison, ultimately sentencing Nichols to 405 months in prison. Had Nichols been sentenced after *Booker* was decided, it would be clear that the district court erred by sentencing Nichols using a mandatory Guidelines range based on judge-found facts, and it would be equally clear that Nichols's counsel performed deficiently by not objecting to and then appealing the district court's sentencing determination.

Of course, Nichols was not sentenced after *Booker* was decided; Nichols was sentenced on October 11, 2002, over two years before the Supreme Court's decision in *Booker*. Usually, a later change in the law will not render an attorney's earlier performance deficient. "'Only in a rare case' will a court find ineffective assistance of counsel based upon a trial attorney's failure to make an objection that would have been overruled under then-prevailing law." *Lucas v. O'Dea*, 179 F.3d 412, 420 (6th Cir. 1999) (internal citation omitted); *see also Alcorn v. Smith*, 781 F.2d 58, 62 (6th Cir. 1986) ("[N]onegregious errors such as failure to perceive or anticipate a change in the law . . . generally cannot be considered ineffective assistance of counsel."). We have previously noted that one of those "rare cases" can arise when counsel "fail[s] to raise an issue whose resolution is clearly foreshadowed by existing decisions." *Lucas*, 179 F.3d at 420. We believe that this case presents another of those "rare cases."

In *Apprendi v. New Jersey*, the Supreme Court determined that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. Because *Apprendi* addressed only facts that increased the penalty for a crime beyond the statutory maximum and did not address facts that increased a mandatory Guidelines range, we are wary to say that *Booker* was "clearly foreshadowed" by *Apprendi*. *Cf. Valentine v. United States*, 488 F.3d 325, 328-31 (6th Cir. 2007) (concluding that *Booker* does not apply retroactively on collateral review to defendants sentenced after *Apprendi*); *United States v. Koch*, 383 F.3d 436, 438-43 (6th Cir. 2004) (en banc) (concluding 8-5 that *Apprendi* and *Blakely v. Washington*, 542 U.S. 296 (2004), did not require striking down the Federal Sentencing Guidelines), *vacated*, 544 U.S. 995 (2005). However, *Apprendi* did cast considerable doubt on the constitutionality of the mandatory Guidelines regime. At the time, a number of commentators suggested that the Federal Sentencing Guidelines might not survive *Apprendi*.[1] *See, e.g.*, Susan N. Herman, *Applying* Apprendi *to the*

_____

[1] In *Harris v. United States*, 536 U.S. 545 (2002), decided just a few months before Nichols's sentencing, the Supreme Court concluded that increasing a defendant's *minimum* sentence because of a sentencing enhancement based on judge-found facts did not violate the Sixth Amendment. *Id.* at 568-69. At least one commentator has stated that "the practical consequences of *Harris* appeared mighty clear at the time" and that "*Harris* suggested that, despite an *Apprendi*

*Federal Sentencing Guidelines: You Say You Want a Revolution?*, 87 IOWA L. REV. 615, 621-25 (2002); Jeffrey Standen, *The End of the Era of Sentencing Guidelines*: Apprendi v. New Jersey, 87 IOWA L. REV. 775, 796-97 (2002); Freya Russell, Casenote, *Limiting the Use of Acquitted and Uncharged Conduct at Sentencing:* Apprendi v. New Jersey *and Its Effect on the Relevant Conduct Provision of the United States Sentencing Guidelines*, 89 CAL. L. REV. 1199, 1224-29 (2001); Note, *The Unconstitutionality of Determinate Sentencing in Light of the Supreme Court's "Elements" Jurisprudence*, 117 HARV. L. REV. 1236, 1249-1254 (2004). More importantly, the justices themselves made clear that the Federal Sentencing Guidelines stood on uncertain ground in the wake of *Apprendi*; the four dissenting justices suggested that application of the majority's reasoning in *Apprendi* would require striking down the Guidelines, *Apprendi*, 530 U.S. at 544, 551-52 (O'Connor, J., dissenting), and one concurring justice suggested that he himself might apply *Apprendi* to invalidate the Guidelines, *id.* at 523 n.11 (Thomas, J., concurring).

With the future state of the law so uncertain post-*Apprendi*, we believe that any counsel whose performance satisfied an "objective standard of reasonableness," *Strickland*, 466 U.S. at 688, would have at least been cognizant of possible extensions of *Apprendi* to challenge the Federal Sentencing Guidelines and the necessity of preserving those challenges in case the Supreme Court struck down the Guidelines while the defendant's case was pending on direct appeal. The addition of multiple enhancements to Nichols's Guidelines range, including at least two—vulnerability of a victim and use of a child in the course of the offense—indisputably based purely on judge-found facts, provided the ideal circumstances for one such challenge.[2] Additionally, Nichols's counsel did challenge Nichols's Guidelines range on other grounds, including a request for a downward departure. Under these circumstances, we conclude that counsel performed deficiently by failing to raise an additional Sixth Amendment challenge to the increases in Nichols's Guidelines range.

For many of those same reasons, we believe that adequate counsel would have preserved the Sixth Amendment challenge by raising it on appeal, had it been raised in the district court. Counsel raised only one issue on appeal, a challenge to the jury instructions. Thus, there was no danger that preserving the Sixth Amendment challenge on appeal would require counsel to limit discussion of stronger issues in order to satisfy briefing page limits or would otherwise distract from the other issues raised on appeal, and we can identify no other strategic reason why counsel would refuse to preserve the Sixth Amendment challenge on appeal. *See McFarland v. Yukins*, 356 F.3d 688, 711 (6th Cir. 2004). Although "counsel has no obligation to raise every possible claim" on appeal, *id.* at 710, we conclude that, given the uncertain state of the law, the significant potential benefit to Nichols, and the insignificant costs—strategic or otherwise—required to preserve the claim, adequate counsel would have preserved the Sixth Amendment challenge on appeal. *Cf. United*

---

scare, the structured and guidelines sentencing provisions . . . could continue to operate with judge-centered, administrative sentencing procedures." Douglas A. Berman, *Reconceptualizing Sentencing*, 2005 U. CHI. LEGAL F. 1, 32 (2005). Others disagreed about the impact of *Harris*, however, *see, e.g.*, Note, *The Unconstitutionality of Determinate Sentencing in Light of the Supreme Court's "Elements" Jurisprudence*, 117 HARV. L. REV. 1236, 1258-59 (2004), reinforcing our primary conclusion: that, during the time between the decisions in *Apprendi* and *Booker*, the constitutionality of the Guidelines was in considerable doubt.

[2] This provides a key distinction from the circumstances presented in *United States v. Burgess*, 142 F. App'x 232 (6th Cir.) (unpublished), *cert. denied*, --- U.S. ---, 126 S. Ct. 296 (2005), in which we concluded that an attorney did not perform deficiently by failing to challenge the district court's use of a mandatory Guidelines range when sentencing the defendant. *Id.* at 240-41. *Burgess* is an unpublished decision and therefore does not bind us, but also, and more importantly, involved a defendant whose Guidelines range was calculated solely on the basis of the crime to which he pleaded guilty and his prior convictions, with no additional enhancements. *Id.* at 240. As we noted in *Burgess*, neither *Apprendi* nor any other pre-*Booker* case provided any reason to suspect that the district court erred by sentencing the defendant within the Guidelines range under those circumstances, even though the defendant ultimately might have been entitled to resentencing pursuant to the remedial holding of *Booker* and our subsequent interpretation of that holding in *United States v. Barnett*, 398 F.3d 516 (6th Cir.), *cert. dismissed*, 545 U.S. 1163 (2005). *Burgess*, 142 F. App'x at 240-41.

*States v. Pineda-Arrellano*, --- F.3d ---, 2007 WL 2033992, at \*1 (5th Cir. July 17, 2007) (noting that "hundreds, if not thousands" of criminal defendants in the Fifth Circuit have argued on appeal that, under the reasoning of *Apprendi*, prior felony convictions should be treated as elements of certain offenses, not as sentencing enhancements, in order to preserve the issue in case the Supreme Court overrules *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), a pre-*Apprendi* decision to the contrary).

We have little difficulty concluding that, had the Sixth Amendment challenge been preserved on appeal, adequate counsel would have filed a petition for a writ of certiorari. We issued our mandate in Nichols's direct appeal on July 7, 2004, two weeks after the Supreme Court decided *Blakely v. Washington*. Within those two weeks, a number of lower federal courts had already struck down parts or all of the Federal Sentencing Guidelines, and two weeks later, on July 21, 2004, the Acting Solicitor General sought expedited review in the Supreme Court of two decisions questioning the constitutionality of the Guidelines. *See, e.g.*, Douglas A. Berman, *Reconceptualizing Sentencing*, 2005 U. CHI. LEGAL F. 1, 35-36 & nn.176-77 (2005). Within two more weeks, on August 2, 2004, the Supreme Court granted certiorari in *United States v. Booker*, 542 U.S. 956 (2004), and *United States v. Fanfan*, 542 U.S. 956 (2004). Under these circumstances, any competent attorney would have filed a petition for a writ of certiorari on behalf of Nichols, seeking to take advantage of the decision to come in *Booker*.

We recognize that, under our decision today, the performance of many attorneys who represented criminal defendants after *Apprendi* but before *Blakely* and *Booker* will be deemed constitutionally deficient. The question before us, however, is not what some or most attorneys actually did, but whether the performance of Nichols's counsel "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Although we recognize that common practices may provide evidence of the objective standard by which we should measure the performance of individual attorneys, common practices can never be determinative lest we freeze our expectations of counsel at one moment in time, never to improve or change in response to developments in, for example, education, technology, or the law itself. In this case, we conclude that the performance of Nichols's counsel was constitutionally deficient for failing to take into account and respond to the significant changes in the law effected by *Apprendi*.

### 2. Prejudice

To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding"—in this case, the result of Nichols's sentencing—"would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. As we have recognized previously, it will often be difficult for a defendant to establish on collateral review that he was prejudiced by counsel's failure to challenge the constitutionality of the Guidelines, as he must demonstrate that he had or would have had a direct appeal pending on January 12, 2005, when *Booker* was decided. *See Dunham v. United States*, 486 F.3d 931, 934 (6th Cir. 2007). In this case, however, resolution of this question is clear. Nichols's codefendant, Carlton V. Smith ("Smith"), was sentenced on the same day as Nichols and received an identical sentence of 405 months in prison, five years of supervised release, and restitution in the amount of $851,000. Their appeals were consolidated, and thus Smith's and Nichols's appeals were also decided on the same day. Smith then filed a petition for a writ of certiorari, and on February 28, 2005, the Supreme Court granted Smith's petition, vacated the judgment, and remanded the case for further consideration in light of *Booker*. *Smith v. United States*, 543 U.S. 1180 (2005). On July 26, 2006, we remanded Smith's case to the district court for resentencing, and on remand, Smith was sentenced to 396 months in prison, nine months less than his original sentence. Thus, we can be certain that Nichols's counsel's performance prejudiced him. Had Nichols's counsel pursued a Sixth Amendment

challenge to the enhancements to his Guidelines range and filed a petition for a writ of certiorari in the Supreme Court, Nichols, like Smith, would have been entitled to resentencing.

### III.  CONCLUSION

Because *Apprendi* cast the constitutionality of the Federal Sentencing Guidelines into considerable doubt, and because the enhancements to Nichols's Guidelines range directly presented circumstances that were called into question by *Apprendi*, we conclude that Nichols's counsel was constitutionally ineffective for failing to preserve a Sixth Amendment challenge to his sentence, and we therefore **REVERSE** the judgment of the district court, **VACATE** Nichols's sentence, and **REMAND** the case for resentencing.