*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 09a0160p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

THOMAS ALBERT NICHOLS,
                *Petitioner-Appellant,*

    *v.*

UNITED STATES OF AMERICA,
                *Respondent-Appellee.*

No. 05-6452

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 05-00246—Thomas A. Wiseman, Jr., District Judge.

Argued: September 10, 2008

Decided and Filed: April 29, 2009

Before: BOGGS, Chief Judge; MARTIN, BATCHELDER, MOORE, COLE, CLAY,
GILMAN, GIBBONS, ROGERS, SUTTON, COOK, McKEAGUE, GRIFFIN,
KETHLEDGE, and WHITE, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Mary Hale Morris, BURCH, PORTER & JOHNSON, Memphis, Tennessee, for
Appellant. John-Alex Romano, UNITED STATES DEPARTMENT OF JUSTICE,
Washington, D.C., for Appellee. **ON BRIEF:** Mary Hale Morris, Mary C. Hamm, BURCH,
PORTER & JOHNSON, Memphis, Tennessee, for Appellant. John-Alex Romano, UNITED
STATES DEPARTMENT OF JUSTICE, Washington, D.C., Hilliard H. Hester III,
ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellee.

    BATCHELDER, J., delivered the opinion of the court, in which BOGGS, C. J.,
GILMAN, GIBBONS, ROGERS, SUTTON, COOK, McKEAGUE, GRIFFIN,
KETHLEDGE, and WHITE, JJ., joined. MOORE, J. (pp. 19-25), delivered a separate
dissenting opinion, in which MARTIN, COLE, and CLAY, JJ., joined.

1

———————————————

**OPINION**

———————————————

ALICE M. BATCHELDER, Circuit Judge.  We granted *en banc* review to decide an important constitutional question:  whether — and if so, under what conditions — a criminal defense attorney renders "deficient performance" under *Strickland*'s ineffective-assistance-of-counsel rubric by failing to preserve a future-change-in-the-law argument in the hope that the Supreme Court will strike down the existing law while that defendant's case is still pending on direct appeal.

But, because this particular defendant cannot prevail on his claim of ineffective assistance of counsel in any event, inasmuch as he cannot demonstrate the necessary prejudice, we find that we need not decide this broader constitutional question.  *See*, *e.g.*, *Pearson v. Callahan*, 555 U.S. --, 129 S. Ct. 808, 821 (2009) (citing "the older, wiser judicial counsel not to pass on questions of constitutionality unless such adjudication is unavoidable" (quotation and editorial marks omitted)); *United States v. Elkins*, 300 F.3d 638, 647 (6th Cir. 2002) ("Courts should avoid unnecessary constitutional questions."); *Bowman v. Tenn. Valley Auth.*, 744 F.2d 1207, 1211 (6th Cir. 1984) ("[W]e follow the longstanding practice of the Supreme Court . . . [in declining] to decide questions of a constitutional nature unless absolutely necessary to a decision of the case."  (quotation marks and citation omitted)); *Tower Realty v. City of East Detroit*, 196 F.2d 710, 724 (6th Cir. 1952) ("It is the duty of federal courts to avoid the unnecessary decision of the constitutional questions.").

This defendant's only claim of prejudice is that he was denied the benefit of *Booker*'s change in the law; that is, he missed the opportunity to be re-sentenced under a post-*Booker*, advisory Guidelines scheme.  But, as it turns out, the only way this defendant could have obtained the benefit of *Booker*'s change in the law was by petitioning the Supreme Court for certiorari, which he did not do; this prejudice is therefore the direct and sole consequence of the failure to petition for certiorari.  Because defendants are not constitutionally entitled to the assistance of counsel in preparing petitions for certiorari, *see Ross v. Moffitt*, 417 U.S. 600, 617 (1974), this defendant cannot attribute this prejudice to

any constitutionally deficient performance by his counsel. We must therefore AFFIRM the district court's judgment denying the defendant's motion to vacate his sentence.

**I.**

On April 27, 2000, a federal grand jury indicted Carlton Smith and Thomas Nichols, the appellant here, on bank-extortion and firearm charges. Their joint trial began on May 13, 2002. Ten days later (May 23, 2002), the jury returned a guilty verdict and the court ordered a presentence investigation report ("PSR"). The district court sentenced each of them in October 2002.

By the time of their sentencing, the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), had been of record for more than two years. In *Apprendi*, a five-member majority had held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed *statutory* maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id*. at 490 (emphasis added). In addition, a different group of five justices (the four dissenters and a concurring justice) suggested, without so holding, that this principle could not be limited to the breach of *statutory* maximum sentences, but would necessarily extend "to all determinate-sentencing schemes in which the length of a defendant's sentence[, even] within the statutory range[,] turns on specific factual determinations (*e.g.*, the [F]ederal Sentencing Guidelines)." *Id*. at 544 (O'Connor, J., dissenting, joined by Rehnquist, C.J., and Kennedy and Breyer, JJ.); *id*. at 523 n.11 (Thomas, J., concurring). Thus, the combined opinions in *Apprendi* cast some legitimate doubt on the future validity of the Federal Sentencing Guidelines.[1]

Shortly after the *Apprendi* decision, this circuit (on September 4, 2001) considered and rejected an *Apprendi*-based challenge to the Federal Sentencing Guidelines, explaining:

> Appellant [] makes the novel argument that *Apprendi* also should apply
> to [Federal Sentencing] Guideline enhancements even where the

---

[1]We note also that five different justices suggested, without so holding, that *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), may have been "incorrectly decided," thus calling its future validity into question as well. *See Apprendi*, 530 U.S. at 489. But, even today, over eight years after *Apprendi*, "*Almendarez-Torres* has not been overruled and is still good law." *United States v. Martin*, 526 F.3d 926, 942 (6th Cir. 2008) (citation omitted).

statutory maximum is not exceeded, and that these enhancements are questions that should be decided by a jury, not a trial judge. The holding in *Apprendi*, however, does not remove this discretion from a district judge, and therefore, Appellant's argument is without merit.

*United States v. Schulte*, 264 F.3d 656, 660 (6th Cir. 2001). By September 2002, this same challenge had been raised and rebuffed several times, and our established rule was that it had no merit:

> In this circuit, *Apprendi* has been held to apply when the district court determined a fact that caused the defendant's sentence to exceed a *statutory* maximum or, under some limited circumstances, that required a *statutorily* mandated minimum sentence, without a jury determining the fact beyond a reasonable doubt. *Apprendi* has never been held to apply to every fact that increases the defendant's sentence within the rubric of the [Federal Sentencing G]uidelines.

*United States v. Chapman*, 305 F.3d 530, 535 (6th Cir. 2002) (decided Sept. 26, 2002) (emphasis added); *see also United States v. Copeland*, 304 F.3d 533, 555 n.8 (6th Cir. 2002) (decided Sept. 10, 2002) (noting that "this court has held that *Apprendi* does not remove the discretion of the district judge in determining sentencing enhancements[, so], this argument is without merit").[2] Such was the state of our case law at the time Nichols's counsel was preparing for the sentencing hearing.

On October 2, 2002, Nichols's counsel submitted a 20-page sentencing memorandum in which he raised numerous objections, both legal and factual, to the sentencing enhancements and calculations recommended in the PSR, and also argued for a downward departure. Notably, he did not cite *Apprendi* or raise any *Apprendi*-type argument. On October 7, 2002, counsel for co-defendant Smith filed his own objections to the PSR and also moved for a downward departure.[3]

---

[2]It perhaps bears mention that the *Copeland* panel issued an amended opinion on February 25, 2003, that superseded the original opinion with regard to an unrelated proposition, but did not change the above-cited legal proposition or the quoted language. *See United States v. Copeland*, 321 F.3d 582, 605 n.8 (6th Cir. 2003).

[3]Smith's motions are not in the record submitted to us in this appeal, but the district court's sentencing order and the subsequent appellate opinion contain no indication that Smith raised *Apprendi* or any *Apprendi*-type argument. Had Smith raised such an argument at the joint sentencing, the court would have been obliged to address it, and the same is true for any issue raised in the consolidated appeal. Neither court mentioned an *Apprendi* argument.

On October 11, 2002, the district court held a sentencing hearing, during which it rejected Nichols's counsel's arguments and adopted the PSR's recommended Guidelines calculations — an offense level of 40 and a criminal history category of IV, which resulted in a Guidelines range of 360 months to life. The court imposed a sentence of 300 months in prison for count one and 405 months for count two,[4] to run concurrently with each other and with a separate sentence that Nichols had received from the Eastern District of Tennessee. The court imposed an identical sentence on Smith.

Each defendant filed a notice of appeal that same day, October 11, 2002, and though Nichols and Smith proceeded with separate counsel, we consolidated the two appeals. Smith raised several claims, challenging both his conviction and sentence, though he did not raise any *Apprendi*-type challenge. *See United States v. Nichols*, 100 F. App'x 524 (6th Cir. 2004). Nichols raised only one claim, challenging a jury instruction, and made no mention of *Apprendi*. *Id*. at 526. The panel heard argument on January 27, 2004, and filed its opinion on June 11, 2004, affirming the district court.

On June 24, 2004 — almost two weeks after the panel's filing of its opinion (June 11, 2004) and one day before the expiration of Fed. R. App. P. 40(a)(1)'s 14-day period to seek rehearing of that decision (June 25, 2004) — the Supreme Court issued its decision in *Blakely v. Washington*, 542 U.S. 296, 303 (2004), holding that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." On July 2, 2004, Smith's attorney (belatedly) moved the panel to stay the mandate so that he could petition for rehearing out-of-time on the basis of *Blakely*, but the panel summarily denied the motion without explanation. Nichols's attorney did not move the panel to stay the mandate or move for any rehearing, and the mandate issued on July 12, 2004.

---

[4]The sentence also included five years of supervised release and restitution in the amount of $851,000.

Because the panel had entered judgment on June 11, 2004, Nichols and Smith had until September 9, 2004, (i.e., 90 days) to petition the United States Supreme Court for certiorari. *See* Sup. Ct. R. 13(3) ("The time to file a petition for a writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed, and not from the issuance date of the mandate[.]"). Nichols's counsel did not petition for certiorari, and, in fact, took no further action on Nichols's behalf. Meanwhile, Smith's attorney did petition for certiorari on September 9, 2004, arguing that the sentence was improper because *Blakely* should apply to the Federal Sentencing Guidelines.

Elsewhere, on July 9, 2004, the Seventh Circuit had applied *Blakely* to invalidate the Federal Guidelines, *see United States v. Booker*, 375 F.3d 508 (7th Cir. 2004), and by July 21, 2004, the government had petitioned for certiorari and expedited review. The Supreme Court granted certiorari on August 2, 2004, and heard argument on October 4, 2004. Meanwhile, on August 26, 2004, we had issued an *en banc* decision, *United States v. Koch*, 383 F.3d 436, 438 (6th Cir. 2004), in which we held that "*Blakely* does not compel the conclusion that the Federal Sentencing Guidelines violate the Sixth Amendment," and noted that the Supreme Court would be considering the issue in the coming months. On January 12, 2005, the Court issued *United States v. Booker*, 543 U.S. 220 (2005), in which it held that the mandatory Guidelines *did* violate the Sixth Amendment.

In light of *Booker* and the nature of Smith's claim, the Supreme Court granted Smith's petition for certiorari and remanded his case for resentencing. *See Smith v. United States*, 543 U.S. 1180 (2005). On remand, the district court sentenced him to 396 months in prison,[5] which was nine (9) months less than his original sentence. Smith appealed and a panel of this court affirmed the new sentence. Smith petitioned for certiorari and the Supreme Court denied his petition.

---

[5]The district court re-sentenced Smith to 300 months for count one and 396 months for count two, to run concurrently with each other and with a separate sentence that Smith had received from the Eastern District of Tennessee. The sentence also included five years of supervised release and restitution in the amount of $851,000.

Meanwhile, on March 25, 2005, Nichols, acting *pro se*, filed a 28 U.S.C. § 2255 motion to vacate his conviction and sentence, asserting two claims of ineffective assistance of counsel.  One claim pointed to his trial counsel's failure to challenge the indictment and jury instruction, which, according to Nichols, did not charge him with the necessary specific *mens rea*.  The other claim pointed to his counsel's failure to raise *Apprendi* at sentencing and *Blakely* on direct appeal in opposition to the sentencing court's use of Guidelines enhancements, premised on facts not found by the jury, to increase his sentence above the 50- to 63-month range corresponding to the base offense level.  Recall, however, that at the time of his sentencing in October 2002,"this [*Apprendi*] argument [wa]s without merit" under the law of this circuit.  *See Copeland*, 304 F.3d at 555 n.8.  Recall as well that the opinion disposing of Nichols's appeal had been of record for two weeks (since June 11, 2004) by the time *Blakely* was issued (June 24, 2004), and, therefore, so far as *Blakely* is concerned, Nichols was really arguing that his appellate counsel was ineffective for failing either to move the panel to reconsider the opinion or to petition the Supreme Court for certiorari.

The district court summarily denied Nichols's § 2255 motion in a one-page opinion, finding that "[b]oth allegations [of ineffective assistance of counsel] are without merit."  The district court explained that the first claim was without merit because a "[s]pecific charge of *mens rea* is not required[,] *Warner v. Zent*, 997 F.2d 116, 129 (6th Cir. 1993)."  The district court denied the second claim by explaining that "[Nichols]'s appeal was decided against him on June 11, 2004[,] *Booker v. United States* was not decided until January 12, 2005[,] [and] [t]he Sixth Circuit decided in *Humphress v. United States*, 398 F.3d 855, 860 (6th Cir. 2005)[,] that *Booker* was not retroactive. Therefore, [Nichols]'s complaint regarding enhancements is also without merit."

Nichols obtained a Certificate of Appealability ("COA") on a single issue: "whether Nichols was denied the effective assistance of counsel by his attorney's failure to argue that it was improper to enhance his sentence based on facts that had not been proved to a jury beyond a reasonable doubt."  In his *pro se* brief to the panel, Nichols

actually raised three separate-but-related ineffective-assistance-of-counsel claims regarding the sentencing enhancements, arguing (in his own words):

> Had [Nichols]'s Counsel **[1]** raised the objections at Sentencing under the principles set in *Jones*, supra, and *Apprendi*, supra, to the sentence enhancements and **[2]** followed the objections up on direct appeal with supplemental objections under *Blakely*, and **[3]** Certiorari to the Supreme Court, then a different outcome of the proceedings is shown, because just as co-defendant Carlton Smith's sentences were vacated, [Nichols]'s sentences also would have been vacated[.]

The government responded with a five-page brief, explaining that this circuit had already held, in *United States v. Burgess*, 142 F. App'x 232 (6th Cir. 2005), that the failure of an attorney to perceive or anticipate the Supreme Court's decision in *Booker* was not ineffective assistance of counsel.

In *Burgess*, we had indeed rejected Burgess's *pro se* argument that, in September 2003, his trial counsel was constitutionally ineffective for failing to anticipate *Booker*, based on *Apprendi* and *Blakely*, and correspondingly failing to argue that the mandatory nature of the Federal Sentencing Guidelines was unconstitutional.  Judge Clay, writing for a unanimous panel, explained:

> Burgess's trial counsel cannot be deemed [constitutionally] ineffective for failing to anticipate the Supreme Court's June 24, 2004[,] holding in *Blakely* . . . .  The Supreme Court had not even agreed to hear the appeal in *Blakely* until [October 20, 2003,] over a month after Burgess's sentencing.  Nor can counsel be deemed ineffective for lacking the additional prescience to anticipate that the eventual holding in *Blakely* would lead to the Supreme Court's January 12, 2005[,] decision in *Booker*[,] . . . particularly because the *Blakely* opinion makes clear that it expresses no opinion on the continuing validity of the [F]ederal [G]uidelines.

*Id*. at 240 (certain citations omitted).  In his reply brief, Nichols countered *Burgess* by insisting that he was not arguing that his counsel should have anticipated *Booker*; instead — he argued — his counsel had but to raise the arguments and then (even ignorantly) reap the benefit of *Booker*:

> [T]he government keeps trying to keep this [C]ourt from noticing . . . that[] the question before [it] is, if [Nichols]'s counsel had **[1]** raised []

objections at sentencing under *Apprendi* and **[2]** pursued them on direct appeal (including **[3]** Certiorari to the Supreme Court) under the principles set in *Blakely*, then [] there [is] a reasonable probability that the outcome of these proceedings would have been different.

The panel accepted Nichols's argument and granted him relief, holding that he had indeed been denied his constitutional right to the effective assistance of counsel. *Nichols v. United States*, 501 F.3d 542 (6th Cir. 2007), *reh'g en banc granted and opinion vacated* (Jan. 3, 2008).

The Government moved for *en banc* review, claiming that the panel had committed "precedent-setting error[s] of exceptional public importance." *See* Sixth Cir. R. 35(c); *see also* Fed. R. App. P. 35(a). We granted the motion, vacated the panel opinion, and ordered re-briefing. Whereas Nichols was formerly *pro se*, he now has counsel who, in their "Supplemental En Banc Brief," have framed the appeal in terms of *Blakely* and *Booker*, rather than *Apprendi*, to wit:

> This case presents the issue of whether Nichols's court-appointed counsel was [constitutionally] ineffective for failing to challenge United States Sentencing Guidelines enhancements based upon facts that had not been found by a jury, particularly at a time when countless other defendants had raised the issue in view of the Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296 (2004), and, later, in view of the Supreme Court's grant of certiorari in *United States v. Booker*, 542 U.S. 956 (2004) (granting certiorari).

Elsewhere in the brief, Nichols's *en banc* counsel argue:

> [B]ecause Nichols's [original trial and appellate] counsel ignored [1] the well-known decision in *Blakely*, [2] the grant of certiorari in *Booker*, and [3] the actions taken by other lawyers involved in Nichols's co-defendant's virtually identical case, Nichols's counsel's performance 'fell below an objective standard of reasonableness.'

Consequently, the focus of the *en banc* argument is substantially different from what the panel considered, namely, that by failing to raise *Apprendi* at sentencing, on direct appeal, and in a petition for certiorari, Nichols's counsel provided ineffective assistance. As if to emphasize their break from Nichols's former (*pro se*) theory, Nichols's new counsel offer this very frank concession:

Had Nichols's conviction actually been final on June 11, 2004, before *Blakely* was decided, this would be a different case.  As discussed, however, many events *after* June 11, 2004 (including the *Blakely* decision, the lower courts' holdings that *Blakely* had invalidated the type of enhancements applied to Nichols's sentence, the Supreme Court's grant of certiorari in *Booker*, and Smith's Sixth Circuit and Supreme Court filings) demonstrate the ineffectiveness of Nichols's lawyer for failing to raise the issue during the three months following the *Blakely* decision.

The government counters that after June 11, 2004, Nichols no longer had a *constitutional* right to counsel and, consequently, he had no constitutional right to the effective assistance of counsel.  Therefore, none of the events that transpired after June 11, 2004 (i.e., "in the three months following the *Blakely* decision"), can render Nichols's counsel constitutionally ineffective.

Nichols's *pro se* arguments, together with these new arguments to the *en banc* court, identify a continuum — from sentencing through direct appeal — during which Nichols claims he was repeatedly denied the effective assistance of counsel as guaranteed by the Constitution.  But, as we will explain, there exists a sharp line of demarcation on this continuum, before which a defendant *has* a constitutional right to counsel, and after which that same defendant does not.  Nichols cannot prove ineffective assistance of counsel because he cannot link the two pieces of the ineffective-assistance standard — deficient performance and prejudice — on the same side of the demarcation: he cannot show prejudice at any point at which he had a right to counsel, and he cannot show a right to counsel (and, hence, deficient performance) at any point at which he could show prejudice.

## II.

The Sixth Amendment guarantees that at trial and on direct "first tier" appeal every criminal defendant will have access to a lawyer to assist with his or her defense.  *See Halbert v. Michigan*, 545 U.S. 605, 610 (2005).  But, the Constitution does not entitle a defendant to the assistance of counsel for a discretionary appeal (e.g., a petition for certiorari).  *Ross*, 417 U.S. at 617 ("[T]his Court has followed a consistent policy of

denying applications for appointment of counsel by persons seeking to file jurisdictional statements or petitions for certiorari in this Court."). And, "where there is no constitutional right to counsel there can be no deprivation of effective assistance," *Coleman v. Thompson*, 501 U.S. 722, 752 (1991) (citation omitted), so the failure to file for such review cannot amount to constitutionally ineffective assistance. *See Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982) (holding that because the defendant had no constitutional right to the assistance of counsel in pursuit of state supreme court certiorari, "he could not be deprived of the effective assistance of counsel by his retained counsel's failure to file the [certiorari] application timely").

At trial and on first-tier appeal — the stages at which the defendant does have a constitutional right to counsel — this constitutional right to counsel means "the right to the *effective* assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970) (emphasis added).

> [But, the Sixth Amendment] does not guarantee [] an excellent lawyer. It does not even guarantee [] a good lawyer. Instead, the Sixth Amendment right to the effective assistance of counsel entitles [the criminal defendant] to nothing more than a reasonably competent attorney whose performance falls within the [wide] range of competence demanded of attorneys in criminal cases.

*Moran v. Trippett*, 149 F.3d 1184 (table), 1998 WL 382698, at *5 (6th Cir. 1998) (citation and quotation marks omitted); *see also Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) (noting that "even if an omission [of an issue] is inadvertent, relief is not automatic [because] [t]he Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight").

An habeas petitioner seeking to convince a reviewing court that his or her counsel's assistance was constitutionally ineffective must prove both prongs of a two-prong test:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.

>Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious [that those errors] deprive[d] the [petitioner] of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984) (paragraph break inserted). Because the petitioner must satisfy *both* prongs, the inability to prove either one of the prongs — regardless of which one — relieves the reviewing court of any duty to consider the other. *See id*. at 697.

To demonstrate the first prong, the petitioner must point to specific errors in counsel's performance, *United States v. Cronic*, 466 U.S. 648, 666 (1984), and the reviewing court must subject the allegations to rigorous scrutiny, determining "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance," *Strickland*, 466 U.S. at 690. The court must "indulge a strong presumption" that counsel's conduct was reasonable and might be considered sound trial strategy. *Id*. at 689 (citation and quotation marks omitted). "[J]udicial scrutiny of a counsel's performance must be highly deferential and [] every effort must be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Bell v. Cone*, 535 U.S. 685, 698 (2002) (citation and quotation and editorial marks omitted).

A petitioner demonstrates prejudice — the second prong — by "showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. A reviewing court does not speculate whether a different strategy might have been more successful, but instead "focuses on the question [of] whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). "Unreliability or unfairness does not result [unless] the ineffectiveness of counsel [] deprive[s] the defendant of a[] substantive or procedural right to which the law entitles him." *Id*. Otherwise stated, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Williams v. Taylor*, 529 U.S. 362, 391 (2000) (quotation marks omitted).

At the furthest point of his temporal continuum, Nichols claims that his appellate counsel was deficient — and, consequently, rendered ineffective assistance — because he failed to petition the Supreme Court for certiorari after we affirmed his sentence on June 11, 2004. As mentioned earlier, Nichols claims prejudice — this is, in fact, his only claim of prejudice — on the basis that he was denied the benefit of *Booker*'s change in the law (i.e., re-sentencing under a post-*Booker*, advisory Guidelines scheme), a benefit he would have received had he petitioned for certiorari — because, with a pending petition for certiorari, his conviction would not have become final before the Supreme Court decided *Booker*. *See United States v. Barnett*, 398 F.3d 516, 524 (6th Cir. 2005). So, it certainly appears that Nichols can show prejudice on this claim, and the question is whether his counsel's failure to petition for certiorari amounts to constitutionally deficient performance.

The simple answer is no. As the Supreme Court has made clear, the Constitution does not entitle a criminal defendant to the assistance of counsel for the filing of a petition for certiorari, so counsel's failure to file that petition cannot amount to constitutionally ineffective assistance. *See Ross*, 417 U.S. at 617; *Torna*, 455 U.S. at 587-88; *cf. Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987) ("Since respondent has no underlying constitutional right to appointed counsel in state post-conviction proceedings, she has no constitutional right to insist on the *Anders* procedures which were designed solely to protect that underlying constitutional right."). Because Nichols had no right to the assistance of counsel for the filing of his petition for certiorari, if there was an error in failing to file that petition, we must attribute that error to Nichols himself, not his counsel. *Cf. Abdus-Samad v. Bell*, 420 F.3d 614, 632 (6th Cir. 2005) ("[T]here is no constitutional right to an attorney in collateral proceedings[, so] any errors of a post-conviction attorney, acting as the agent for his client, are attributable solely to that

client." (citing *Coleman*, 501 U.S. at 752-53)); *see also Pena v. United States*, 534 F.3d 92, 95-96 (2d Cir. 2008); *Steele v. United States*, 518 F.3d 986, 988 (8th Cir. 2008).

Nichols's *en banc* counsel appear to have abandoned — or at least de-emphasized — the *constitutional* aspect of this claim, and appear instead to argue some type of general ineffectiveness:

> Although Nichols's claim does not depend on his having a right to counsel at the petition for certiorari stage . . . [t]here is no question that Nichols was entitled to effective counsel who would continue to represent him throughout the pendency of his appeal, including the time after the appeals court had issued its judgment.

Nichols's *en banc* counsel base this assertion on Sixth Circuit Rules 101(a) & (g),[6] in which we have imposed certain obligations on counsel who appear in this court — trial counsel must continue representation on appeal "until specifically relieved by this [c]ourt," *id*. at 101(a), and losing appellate counsel must petition for certiorari, under certain circumstances, *id*. at 101(g).

But Nichols claims relief under 28 U.S.C. § 2255, and "[a] prisoner seeking relief under § 2255 must allege as a basis for relief: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (quotation marks omitted); *see also Hill v. United States*, 368 U.S. 424, 428 (1962). Nichols claims a constitutional error. Therefore, absent a constitutional right, Nichols has no claim. This circuit's procedural rules, standing alone, do not create a constitutional right or impose a constitutional duty. Even if we accept Nichols's claim that his counsel performed deficiently under our procedural rules,

---

[6]The Sixth Circuit Rules were adopted in 1998 and last updated June 1, 2008. The two rules that Nichols's *en banc* counsel cite here are listed in the "Supplemental Procedural Rules" and state:

> Sixth Cir. R. 101(a): "Continued Representation on Appeal. Trial counsel in criminal cases, whether retained or appointed by the district court, is responsible for the continued representation of the client on appeal until specifically relieved by this Court."

> Sixth Cir. R. 101(g): "Petition for Writ of Certiorari. Counsel appointed by the Court is obligated to file a petition for a writ of certiorari in the Supreme Court of the United States if the client requests that such a review be sought and, in counsel's considered judgment, there are grounds for seeking Supreme Court review."

that performance would not be *constitutionally* deficient solely because of a failure to comply with our procedural rules.  *See Steele*, 518 F.3d at 988; *see also Chalk v. Kuhlman*, 311 F.3d 525, 528-29 (2d Cir. 2002).   Without a constitutional right to counsel, we do not even reach the question of deficiency under *Strickland*.  *See Miller v. Keeney*, 882 F.2d 1428, 1431 n.2 (9th Cir. 1989).

We conclude that, because Nichols had no constitutional right to counsel at the petition-for-certiorari stage, he cannot state a claim for ineffective assistance of counsel due to his counsel's failure to petition for certiorari.  The importance of this conclusion cannot be overstated because the failure to petition for certiorari negates any prejudice that may have resulted from Nichols's trial or appellate counsels' allegedly deficient performance.  That is, Nichols's sole claim of prejudice hangs on his inability to receive the benefit of *Booker* (the benefit that co-defendant Smith *did* receive in the form of a post-*Booker* re-sentencing and a nine-month sentence reduction), but Nichols could only have received the benefit of *Booker* if he had petitioned for certiorari, which he did not do.

Nichols fares no better with his claims that his counsel were ineffective at the trial and first-tier appeal stages.  Regardless of whether those attorneys raised and preserved the *Apprendi* or *Blakely* arguments, Nichols could not have benefitted from *Booker*'s subsequent change in the law — that is, obtained a new sentencing hearing under a post-*Booker*, advisory Guidelines scheme — unless he petitioned the Supreme Court for certiorari, which he did not do.  Hence, the outcomes of the trial and first-tier appeal would have been the same whether or not Nichols's counsel performed as he contends they should have, *see Williams*, 529 U.S. at 391, and their alleged errors have not deprived him of any "right to which the law entitles him," *see Lockhart*, 506 U.S. at 372.

Finally, Nichols's *en banc* counsel emphasize that his appellate counsel was ineffective because he failed to move the panel for reconsideration or the court for a rehearing *en banc*:

> [M]any events *after* [issuance of the appellate opinion on] June 11, 2004[,] including the *Blakely* decision, the [other federal] courts' holdings that *Blakely* had invalidated the type of enhancements applied to Nichols's sentence, the Supreme Court's grant of certiorari in *Booker*, and Smith's Sixth Circuit [motion for rehearing] and Supreme Court [petition for certiorari] demonstrate the ineffectiveness of Nichols's lawyer for failing to raise the issue during the three months following the *Blakely* decision.

Nichols's *en banc* counsel's theory is that, even after the entry of judgment in his first-tier appeal (June 11, 2004), his appellate counsel was still obligated to assist with further motions on appeal.[7]

This possibility raises a series of questions:  Is a motion for rehearing part of the first-tier appeal (i.e., a motion within the first-tier appeal), or is it a separate review?  Does a defendant have a right to the assistance of counsel on a motion for rehearing of an appellate decision?  If so, is counsel obligated to file such a motion at the defendant's request, or would some type of *Anders* approach apply?  Is counsel constitutionally obligated to file such a motion even absent a request by the defendant (as Nichols's *en banc* counsel argue here) and, if so, under what circumstances?

But we need not decide these questions because, as with counsel's conduct at trial and on first-tier appeal, even if we were to assume that Nichols's original appellate counsel performed deficiently by failing to move this court for rehearing of Nichols's appeal in light of *Blakely*, Nichols cannot show any resulting prejudice.  As we made clear in *Koch*, 383 F.3d at 438, our view at that time was that "*Blakely* d[id] not compel the conclusion that the Federal Sentencing Guidelines violate the Sixth Amendment."

---

[7]In support of this possibility, Nichols refers to *Smith v. Ohio Department of Rehabilitation*, 463 F.3d 426, 428 (6th Cir. 2006), a case in which we held that counsel's failure to provide the defendant with timely notice of the appellate decision was constitutionally deficient performance because the duty to communicate the outcome of the appeal "related to the representation on direct appeal of right at the [first-tier] Court of Appeals," a proceeding in which the defendant *does* have a constitutional right to the assistance of counsel. But *Smith* does not speak to the question of an appellate attorney's duty beyond the first-tier appellate judgment itself and is therefore of no help to Nichols here.

Nichols also attempts to rely on *White v. Shotten*, 201 F.3d 743, 752-53 (6th Cir. 2000), a case in which we held that Ohio's Appellate Rule 26(B) application for re-opening an appeal on the basis of ineffective assistance of appellate counsel is part of a criminal defendant's direct appeal and opined that the defendant "must be accorded effective assistance of counsel throughout *all* phases of that [first-tier appellate] stage of the criminal proceedings." This case is inapposite, as it concerns state court first-tier appellate review, but more importantly, it was expressly and unequivocally overruled by *Lopez v. Wilson*, 426 F.3d 339, 341 (6th Cir. 2005) (*en banc*).  Nichols's reliance is misplaced.

Therefore, Nichols cannot show any probability that a rehearing petition, without something more, would have delayed the date of finality of his conviction for an additional three months or more, until the Supreme Court issued its decision in *Booker*.

Nichols himself, the original panel, and Nichols's *en banc* counsel have all taken the position that Nichols's situation is perfectly analogous to that of his former co-defendant, Carlton Smith,[8] albeit Smith *did* move for a rehearing on the basis of *Blakely* and *did* petition the Supreme Court for certiorari. We denied Smith's motion for rehearing, which might well indicate that we would have denied Nichols's equivalent motion, had he filed one, but that is beside the point. The point is that although neither Smith nor Nichols actually had a rehearing before this court, Smith still obtained the relief he sought — by petitioning the Supreme Court for certiorari.

The filing of a motion for rehearing before this court is not a prerequisite to the filing of a petition for certiorari, *see* Sup. Ct. R. 13(3); *see also Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289, 1296 n.4 (11th Cir. 2005) ("A petition for rehearing or suggestion for rehearing *en banc* is not, of course, required before a petition for certiorari may be filed in the United States Supreme Court."), and hence, the failure to file that motion had no effect on Nichols's ability to petition for certiorari. Counsel's failure to move for reconsideration or rehearing en banc did not prejudice Nichols. To the extent that Nichols suffered prejudice, that prejudice was the result of his failing to petition for certiorari, a failing he cannot attribute to counsel. Nichols cannot demonstrate constitutionally ineffective assistance of counsel and his motion to vacate his sentence must fail.

---

[8]Nichols bases his theory of prejudice on the assumption that because co-defendant Smith was successful on his direct appeal, Nichols necessarily would have been successful on his direct appeal as well. But, we have elsewhere condemned such an approach, saying: "Contrary to [appellant]'s arguments, the fact that his codefendant succeeded on a similar claim is not dispositive. . . . [S]uch an approach would improperly turn on the type of hindsight discouraged by *Strickland*." *Range v. United States*, 25 F.3d 1049 (table), 1994 WL 252643, at *4 (6th Cir. June 9, 1994).

## III.

Nichols has not shown that his counsel was constitutionally ineffective for failing to anticipate or foresee a change in the law and raise an *Apprendi*-based challenge at sentencing or on direct appeal, for failing to move the appellate court for reconsideration on a *Blakely*-based claim in post-appellate proceedings, or for failing to petition the Supreme Court for certiorari based on *Booker*. For the reasons discussed in this opinion, we **AFFIRM** the district court's judgment.

———————

**DISSENT**

———————

KAREN NELSON MOORE, Circuit Judge, dissenting.  In October 2002, Petitioner-Appellant Thomas Albert Nichols received a sentence of 405 months of imprisonment under the then-mandatory United States Sentencing Guidelines. Nichols's Guidelines range was enhanced based on facts found solely by the sentencing judge. Even though, at the time of Nichols's sentencing, the constitutionality of the Guidelines had been called into serious question by a majority of the Justices in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), Nichols's counsel made no *Apprendi* objection before the sentencing court.  Even though, while Nichols's direct appeal was still pending, the Supreme Court granted certiorari in *Blakely v. Washington*, 542 U.S. 296 (2004), to determine whether *Apprendi* applied to determinate statutory sentencing schemes, Nichols's counsel failed to raise any *Apprendi* argument during Nichols's appeal. Finally, even though Nichols could have filed a timely petition for rehearing when the Supreme Court decided *Blakely*, Nichols's counsel failed to file either a petition for rehearing in this court or a petition for certiorari.  As a result of his counsel's failure to make any argument at any point that Nichols was sentenced in violation of the Sixth Amendment, Nichols's sentence became final before the Supreme Court held in *United States v. Booker*, 543 U.S. 220 (2005), that increasing a defendant's mandatory Guidelines range based on judge-found facts violates the Sixth Amendment right to a jury trial.  The attorney for Nichols's codefendant Carlton Smith, on the other hand, did file a petition for rehearing and a petition for certiorari in light of *Blakely*, and Smith's sentence was reduced on remand.

Nichols now argues that, based on *Apprendi*, *Blakely*, and the Supreme Court's grant of certiorari in *Booker*, his counsel should have raised Sixth Amendment challenges to the sentencing enhancements at various stages of his trial and appeal. Because this case presents a unique combination of circumstances in which *Apprendi*, followed by the Supreme Court's grant of certiorari in *Blakely*, cast the constitutionality

of the Guidelines into serious doubt, and where the enhancements to Nichols's Guidelines range directly presented circumstances that were called into question by *Apprendi* and *Blakely*, I conclude that Nichols's counsel was constitutionally ineffective for failing to preserve a Sixth Amendment challenge to Nichols's sentence.

Claims of ineffective assistance of counsel are analyzed under the familiar two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). "First, the defendant must show that counsel's performance was deficient." *Id*. at 687. "Second, the defendant must show that the deficient performance prejudiced the defense." *Id*.

Nichols argues that his counsel performed deficiently by failing to argue either at his sentencing or on appeal that the enhancements to his then-mandatory Guidelines range violated the Sixth Amendment. To show that his counsel's performance was deficient, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. "[T]he defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 688.

There is no question that, had Nichols been sentenced according to mandatory Guidelines after *Booker* was decided, his claim would be meritorious. The district court increased Nichols's Guidelines range based on judge-found facts—for example, the two-point enhancements for vulnerability of a victim and use of a child in the course of the offense, both based solely on judge-found facts, increased Nichols's Guidelines range from between 262 and 327 months in prison to between 360 months and life in prison. *See* U.S. Sentencing Guidelines Manual ch. 3, pt. A. (2001). The district court applied as mandatory Nichols's Guidelines range of 360 months to life in prison, ultimately sentencing Nichols to 405 months in prison. Had Nichols been sentenced after *Booker* was decided, it would be clear that the district court erred by sentencing Nichols using a mandatory Guidelines range based on judge-found facts, and it would be equally clear that Nichols's counsel performed deficiently by not objecting to and then appealing the district court's sentencing determination.

Of course, Nichols was not sentenced after *Booker* was decided; Nichols was sentenced on October 11, 2002, over two years before the Supreme Court's decision in *Booker*. Usually, a later change in the law will not render an attorney's earlier performance deficient. "'Only in a rare case' will a court find ineffective assistance of counsel based upon a trial attorney's failure to make an objection that would have been overruled under then-prevailing law." *Lucas v. O'Dea*, 179 F.3d 412, 420 (6th Cir. 1999) (internal citation omitted). We have previously noted that one of those "rare cases" can arise when counsel "fail[s] to raise an issue whose resolution is clearly foreshadowed by existing decisions." *Lucas*, 179 F.3d at 420. I believe that this case presents another of those "rare cases."

Beginning prior to Nichols's sentencing and continuing throughout the pendency of his appeal, a major shift was occurring in the Supreme Court's sentencing jurisprudence. First, in *Apprendi v. New Jersey*, the Supreme Court determined that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. At the time, a number of commentators suggested that the federal Sentencing Guidelines might not survive *Apprendi*. *See, e.g.*, Susan N. Herman, *Applying* Apprendi *to the Federal Sentencing Guidelines: You Say You Want a Revolution?*, 87 Iowa L. Rev. 615, 621-25 (2002); Jeffrey Standen, *The End of the Era of Sentencing Guidelines*: Apprendi v. New Jersey, 87 Iowa L. Rev. 775, 796-97 (2002); Freya Russell, Casenote, *Limiting the Use of Acquitted and Uncharged Conduct at Sentencing*: Apprendi v. New Jersey *and Its Effect on the Relevant Conduct Provision of the United States Sentencing Guidelines*, 89 Cal. L. Rev. 1199, 1224-29 (2001); Note, *The Unconstitutionality of Determinate Sentencing in Light of the Supreme Court's "Elements" Jurisprudence*, 117 Harv. L. Rev. 1236, 1249-1254 (2004). More important, a majority of the Justices themselves made clear that the federal Sentencing Guidelines stood on uncertain ground in the wake of *Apprendi*; the four dissenting Justices suggested that application of the majority's reasoning in *Apprendi* would require striking down the Guidelines, *Apprendi*, 530 U.S. at 544, 551-52 (O'Connor, J.,

dissenting), and one concurring Justice suggested that he himself might apply *Apprendi* to invalidate the Guidelines, *id.* at 523 n.11 (Thomas, J., concurring).

In October 2003, before oral argument in Nichols's direct appeal, the Supreme Court granted certiorari in *Blakely v. Washington* on the question of whether a fact necessary for an upward departure from Washington's statutory standard sentencing range must be proved according to the procedures mandated by *Apprendi*, indicating to all that the Supreme Court soon would consider whether the Sixth Amendment prohibits the use of judge-found facts to increase a mandatory guidelines range. On June 24, 2004, while Nichols still could have filed a timely petition for rehearing before this court, the Supreme Court answered this question in the affirmative in *Blakely*, holding that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." 542 U.S. at 303 (citing *Ring v. Arizona*, 536 U.S. 584, 602 (2002)). The next day, the *New York Times* ran a front-page article on the *Blakely* decision, noting that "'[t]here is nothing to suggest that the federal guidelines would get different treatment.'" Linda Greenhouse, *Justices, in Bitter 5-4 Split, Raise Doubts on Sentencing Guidelines*, N.Y. Times, June 25, 2004, at A1 (quoting Professor Stephen Bibas).

With the future state of the law so uncertain post-*Apprendi*, I believe that any counsel whose performance satisfied an "objective standard of reasonableness," *Strickland*, 466 U.S. at 688, would have at least been cognizant of possible applications of *Apprendi* to challenge the federal Sentencing Guidelines and the necessity of preserving those challenges in case the Supreme Court struck down the Guidelines while the defendant's case was pending on direct review. The addition of multiple enhancements to Nichols's Guidelines range, including at least two—vulnerability of a victim and use of a child in the course of the offense—indisputably based purely on judge-found facts, provided the ideal circumstances for one such challenge.[1]

---

[1] This provides a key distinction from the circumstances presented in *United States v. Burgess*, 142 F. App'x 232 (6th Cir.) (unpublished), *cert. denied*, 546 U.S. 919 (2005), in which we concluded that an attorney did not perform deficiently by failing to challenge the district court's use of a mandatory Guidelines range when sentencing the defendant. *Id.* at 240-41. *Burgess* involved a defendant whose Guidelines range was calculated solely on the basis of the crime to which he pleaded guilty and his prior

Additionally, Nichols's counsel did challenge Nichols's Guidelines range on other grounds, including a request for a downward departure. Under these circumstances, I conclude that counsel performed deficiently by failing to raise an additional Sixth Amendment challenge to the increases in Nichols's Guidelines range.

For many of those same reasons, I believe that adequate counsel would have preserved the Sixth Amendment challenge by raising it on appeal, particularly in light of the Court's grant of certiorari in *Blakely*. Counsel raised only one issue on appeal, a challenge to the jury instructions. Thus, there was no danger that preserving the Sixth Amendment challenge on appeal would require counsel to limit discussion of stronger issues in order to satisfy briefing page limits or would otherwise distract from the other issues raised on appeal, and I can identify no other strategic reason why counsel would refuse to preserve the Sixth Amendment challenge on appeal. *See McFarland v. Yukins*, 356 F.3d 688, 711 (6th Cir. 2004). Although "counsel has no obligation to raise every possible claim" on appeal, *id.* at 710, I conclude that, given the uncertain state of the law, the significant potential benefit to Nichols, and the insignificant costs—strategic or otherwise—required to preserve the claim, adequate counsel would have preserved the Sixth Amendment challenge on appeal, *cf. United States v. Pineda-Arrellano*, 492 F.3d 624, 625 (5th Cir. 2007) (noting that "hundreds, if not thousands" of criminal defendants in the Fifth Circuit have argued on appeal that, under the reasoning of *Apprendi*, prior felony convictions should be treated as elements of certain offenses, not as sentencing enhancements, in order to preserve the issue in case the Supreme Court overrules *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), a pre-*Apprendi* decision to the contrary). Moreover, at the time that *Blakely* was decided, Nichols still had one day to file a timely petition for rehearing in this court, which would have been a simple task had his counsel been keeping abreast of cases pending before the Supreme Court.

---

convictions, with no additional enhancements. *Id.* at 240. As we noted in *Burgess*, neither *Apprendi* nor any other pre-*Booker* case provided any reason to suspect that the district court erred by sentencing the defendant within the Guidelines range under those circumstances, even though the defendant ultimately might have been entitled to resentencing pursuant to the remedial holding of *Booker* and our subsequent interpretation of that holding in *United States v. Barnett*, 398 F.3d 516 (6th Cir.), *cert. dismissed*, 545 U.S. 1163 (2005). *Burgess*, 142 F. App'x at 240-41.

To have raised an *Apprendi*-type argument either at sentencing or on appeal, Nichols's counsel need not have been clairvoyant or predicted the precise remedy that the Supreme Court would craft in *Booker*. Anyone who surveyed the legal landscape from 2002 to 2004 would have seen that the tide had shifted on determinate sentencing guidelines and need only have applied the Supreme Court precedent established in *Apprendi* to raise an argument that the enhancement of Nichols's Guidelines range by judge-found facts presented Sixth Amendment problems. Because Nichols's counsel did not do so, his performance fell below the "objective standard of reasonableness" required by *Strickland*. 466 U.S. at 688.

To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding"—in this case, the result of Nichols's sentencing—"would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. As we have recognized previously, it often will be difficult for a defendant to establish on collateral review that he was prejudiced by counsel's failure to challenge the constitutionality of the Guidelines, as he must demonstrate that he had or would have had a direct appeal pending on January 12, 2005, when *Booker* was decided. *See Dunham v. United States*, 486 F.3d 931, 934 (6th Cir. 2007). But here, there were several ways in which Nichols's appeal would have remained open when *Booker* was decided.

The majority concludes that Nichols is not entitled to relief because he had no right to effective assistance of counsel in petitioning the Supreme Court for certiorari, precluding Nichols from arguing that he was prejudiced by his failure to file a petition for certiorari. Because Smith, Nichols's codefendant, obtained the advantage of *Booker* after Smith's counsel filed a petition for certiorari, and given the injustice apparent where Nichols and his codefendant obtained vastly different results due to the disparate performances of their respective counsels, it is easy to focus on Nichols's counsel's failure to attempt this avenue of relief. The question is not, however, whether counsel was ineffective in failing to petition for certiorari, but whether Nichols's counsel's

ineffective performance in not raising a Sixth Amendment issue at *any* point in the proceedings prejudiced Nichols's later ability to reap the benefit of *Booker*. The majority's focus on counsel's failure to petition for certiorari ignores the fact that there were several routes, aside from the one taken by Smith, through which Nichols could have had an appeal pending, either before this court or before the Supreme Court. For example, had counsel raised a Sixth Amendment argument either at sentencing or on direct appeal, Nichols likely would have known to raise this argument at a later date. Further, the majority's suggestion that *United States v. Koch*, 383 F.3d 436 (6th Cir. 2004) (en banc), *vacated*, 544 U.S. 995 (2005), made it clear that *Blakely* did not invalidate the Guidelines ignores the fact that *Koch* came down well after Nichols's direct appeal was decided. Prior to *Koch*, a panel of this court did apply *Blakely* to the Guidelines, showing that it is reasonably likely that a panel of this court would have applied *Blakely* to invalidate Nichols's sentence. *See United States v. Montgomery*, No. 03-5256, 2004 WL 1562904 (6th Cir. July 14, 2004), *reh'g en banc granted and opinion vacated* (6th Cir. July 19, 2004). Given these and other possible outcomes, there is a reasonable probability that Nichols's case would have been in a different procedural posture such that his appeal would have been open on January 12, 2005.

Because *Apprendi* and *Blakely* cast the constitutionality of the federal Sentencing Guidelines into serious doubt, and because the enhancements to Nichols's Guidelines range directly presented circumstances that were called into question by *Apprendi* and *Blakely*, I conclude that Nichols's counsel was constitutionally ineffective for failing to preserve a Sixth Amendment challenge to his sentence.