RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 10a0121p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

EUGENE WILLIAMS GALL, JR.,
         *Petitioner-Appellee,*

     *v.*

GENE SCROGGY, Warden,
         *Respondent-Appellant.*

No. 08-6553

_____

Appeal from the United States District Court
for the Eastern District of Kentucky at Covington.
No. 87-00056—Danny C. Reeves, District Judge.

Submitted: January 13, 2010

Decided and Filed: April 29, 2010

Before: MARTIN and WHITE, Circuit Judges; ZOUHARY, District Judge.[*]

_____

## COUNSEL

**ON BRIEF:** Matthew R. Krygiel, OFFICE OF THE KENTUCKY ATTORNEY GENERAL, Frankfort, Kentucky, for Appellant. Timothy G. Arnold, Jeffrey E. Sherr, DEPARTMENT OF PUBLIC ADVOCACY, Frankfort, Kentucky, for Appellee.

     MARTIN, J., delivered the opinion of the court, in which WHITE, J., joined. ZOUHARY, D. J. (pp. 18-22), delivered a separate dissenting opinion.

_____

## OPINION

_____

     BOYCE F. MARTIN, JR., Circuit Judge. This is Eugene Gall's third appearance in our Court arising out of his 1978 murder conviction and sentence of death in Kentucky state court. Gall was the appellant in his two prior appearances, and his record

_____

[*]The Honorable Jack Zouhary, United States District Judge for the Northern District of Ohio, sitting by designation.

in that role is one-and-one. In 2000, we reversed the district court's denial of Gall's petition for a writ of habeas corpus, found that Gall's 1978 murder conviction was unconstitutional, and therefore ordered the district court to grant Gall a conditional writ of habeas corpus. *Gall v. Parker (Gall III)*, 231 F.3d 265 (6th Cir. 2000).[1] The condition placed on the writ allowed the Commonwealth either to release Gall or to initiate involuntary civil commitment proceedings due to Gall's extreme and pervasive psychological issues. Then, in 2003, we affirmed the district court's denial of Gall's request for an order compelling the Commonwealth to proceed with involuntary commitment instead of releasing him into the custody of the state of Ohio. *Gall v. Scroggy (Gall IV)*, 69 F. App'x 251 (6th Cir. 2003).

Here, however, Gall finds himself in the unusual position of defending the district court's decision, as it is the Commonwealth that brings this appeal. After unsuccessfully seeking an order from the Kentucky state courts vacating the 1978 conviction and expunging it from his record, Gall again turned to the district court for relief. He sought an order mandating that the Commonwealth vacate the conviction. The district court agreed with Gall, declared that the 1978 conviction was nullified, and directed the Commonwealth to expunge the conviction from Gall's criminal record. *Gall v. Scroggy*, No. 2:87-cv-56, 2008 U.S. Dist. LEXIS 98254 (E.D. Ky. Dec. 4, 2008). The Commonwealth now appeals, and we **AFFIRM**.

## I.

In 1978, Gall was convicted in Kentucky state court of raping and murdering a twelve-year-old girl and was sentenced to death. In 2000, though we acknowledged that there was "little doubt" that Gall had committed the horrible crimes with which he had been charged, we conditionally granted Gall's petition for a writ of habeas corpus due to the Commonwealth's failure to prove an essential element of first-degree murder as

---

[1] For purposes of clarity, we continue with the numbering system that we adopted in our 2000 opinion granting the conditional writ. 231 F.3d at 278. *Gall I* refers to the decision of the Kentucky Supreme Court affirming Gall's conviction and sentence on direct appeal, *Gall v. Commonwealth*, 607 S.W.2d 97 (Ky. 1980), and *Gall II* refers to the Kentucky Supreme Court's opinion denying Gall's request for state habeas relief, *Gall v. Commonwealth*, 702 S.W.2d 37 (Ky. 1985).

it existed at the time in Kentucky law. *Gall III*, 231 F.3d at 277. Recognizing that Gall nevertheless posed a danger to society as a result of his uncontrollable psychological impulses and should never be allowed to rejoin free society, we "condition[ed] the grant of Gall's habeas petition on the state's granting him an involuntary hospitalization proceeding, just as he would have been provided if he had been found insane under Ky. Rev. Stat. Ann. § 504.030 (requiring such a proceeding for defendants who are acquitted by reason of insanity)." *Id.* at 336.[2]

The Commonwealth sought en banc and Supreme Court review to no avail. The district court thus took the case back up on remand to order the conditional writ and to supervise the release or commitment process. It became apparent during a status conference that the Commonwealth did not intend to initiate involuntary commitment proceedings and, instead, intended to release Gall into the custody of Ohio, where Gall had been convicted of numerous crimes and sentenced to life in prison. *State v. Gall*, 415 N.E.2d 1008 (Ohio Ct. App. 1980) (affirming conviction). Gall understandably preferred to spend the rest of his life in a Kentucky mental hospital instead of an Ohio prison. Thus, in 2001, under the same caption and case number as his original 1987 habeas petition, he moved the district court to enforce our judgment, arguing that our conditional writ essentially amounted to a directive ordering the Commonwealth to initiate involuntary commitment and that the Commonwealth was powerless to opt to extradite him to Ohio instead.

Gall's 2001 motion to enforce our judgment asked that the district court enter "the attached Final Judgment," a draft order that Gall tendered with his motion. The draft order purported to direct the Commonwealth to proceed with involuntary commitment proceedings and included, among other things, language declaring that his 1978 conviction and death sentence "are unconstitutional and are VACATED." The district court did not adopt Gall's proposed judgment. Instead, for reasons not apparent

---

[2]The commitment had to be carried out under Kentucky's involuntarily commitment procedures as opposed to voluntary commitment even if Gall acquiesced in the result of institutionalization. This was so because a person who voluntarily commits himself can leave whenever he wants, an unacceptable option given Gall's continued risk to the public.

from the record, it entered its own judgment ordering Gall's release within ninety days, with an additional thirty days if the Commonwealth elected to proceed with civil commitment. Importantly for purposes of this appeal, the district court's judgment did not include language vacating Gall's 1978 conviction or otherwise addressing its continued presence on his record.

When the Commonwealth released Gall into Ohio's custody, Gall appealed the district court's judgment. His sole argument on appeal was that the district court should have ordered the Commonwealth to proceed with involuntary commitment; he did not raise on appeal the district court's failure to vacate the underlying conviction. Our Court affirmed the district court in 2003. *Gall IV*, 69 F. App'x 251.

After losing his fight to stay in Kentucky, Gall soon moved the Kentucky state court to vacate the conviction. He filed an action in state court in 2004 seeking to have the conviction vacated under Kentucky state procedure. The trial court denied the motion and, in June 2007, the Kentucky Court of Appeals affirmed. *Gall v. Commonwealth*, No. 2006-CA-112-MR, 2007 Ky. App. Unpub. LEXIS 10 (Ky. Ct. App. June 1, 2007). The Kentucky Supreme Court denied review in March 2008.

Gall therefore returned to federal court seeking an order directing the Commonwealth to vacate his conviction. Again under the caption of his initial habeas claim, Gall moved to enforce our ruling in *Gall III* declaring the conviction unconstitutional. Gall essentially argued that an unconstitutional conviction is a legal nullity and therefore expungement of the conviction is required. He claims that vacation of his conviction is important because he is set to come before the parole board in Ohio in 2021 and that, in assessing his suitability for parole, a prior murder conviction on his record would be relevant. The Commonwealth opposed Gall's motion on the following theories: (1) that either the district court lacked jurisdiction to grant the motion or that the matter is moot because the Commonwealth has released Gall in accordance with the writ; (2) venue was improper in federal court in Kentucky because Gall is currently incarcerated in Ohio; (3) Gall failed to show harm flowing from the collateral consequences of the conviction remaining on his record, so his pleadings do not allege

injury; (4) Gall either waived his right to or is procedurally barred from seeking to have the conviction vacated; and (5) that notions of federalism, comity, and justice cut against vacating Gall's conviction because neither the Commonwealth nor its courts want to vacate the conviction and because vacating the conviction could aid in Gall's parole in Ohio. Magistrate Judge J. Gregory Wehrman recommended that the court grant Gall's motion and, over the Commonwealth's objection, the district court adopted the magistrate's recommendation in a well-reasoned opinion. The court therefore declared that the conviction was nullified and directed the Commonwealth to expunge the conviction.[3] The Commonwealth timely appealed.

## II.

Though Gall styles his motion as a motion to enforce our judgment in *Gall III*, he brought the motion under the caption of his federal habeas case, and the motion raises substantive questions of the implication of a writ of habeas corpus and the power of a federal court sitting in habeas. We generally review a district court's disposition of a habeas petition de novo and its findings of fact for clear error. *Satterlee v. Wolfenbarger*, 453 F.3d 362, 365 (6th Cir. 2006). Questions of law or mixed questions of law and fact are reviewed de novo. *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). As this appeal principally concerns legal conclusions regarding the federal court's power to order expungement of a state conviction and policy questions regarding whether the court should exercise that power, we review the district court's decision de novo.

## III.

The Commonwealth's arguments on appeal are materially identical to those made before the district court. Prior to addressing these arguments in turn, however, it is

---

[3]The district court correctly explained that, although Gall sought an order vacating the conviction, the federal court does not have the authority to vacate a state conviction as vacation is an executory act. Instead, the federal court has the authority to nullify a conviction and to direct that it be expunged. It is by virtue of this expungement order that the state must vacate the conviction. 2008 U.S. Dist. LEXIS 98254.

useful to review our leading case on the ability of a federal court sitting in habeas to nullify an unconstitutional state conviction.

That case is *Gentry v. Deuth*, 456 F.3d 687 (6th Cir. 2006). The issue in *Gentry* was whether a federal court retains jurisdiction over a habeas case for purposes of declaring a state conviction deemed unconstitutional to be null and void if the defendant is no longer in state custody.[4] On the way to answering in the affirmative, we characterized the expungement of an unconstitutional conviction from one's record as the "essential relief" contemplated by a conditional writ of habeas corpus. *Id.* at 691 ("[T]he court's May 2004 order [granting a conditional writ of habeas corpus ordering either release or retrial within ninety days] implicitly expected that the Commonwealth would vacate the prior judgment pursuant to seeking a new trial, and thus the Commonwealth's failure to seek a new trial effectively circumvented the district court's purpose."); *see also id.* at 695 ("[A] successful habeas challenge to an unconstitutional conviction necessitates relief not only from any present incarceration arising from that conviction, but also from any collateral consequences thereof. Therefore, Gentry's challenge to the collateral consequences of her conviction was implied by her original petition challenging her conviction as unconstitutional . . . ."). Thus, because a federal court always retains jurisdiction to enforce its lawful judgments, including habeas judgments, the court has the authority to see that its judgment is fully effectuated. This includes the ability to order the state to expunge a conviction. *Id.* at 692, 696-97.

In other words, a habeas petition challenging the constitutionality of a conviction (as opposed to the constitutionality of a particular sentence) challenges both the conviction itself and the resulting confinement and other collateral or incidental consequences stemming from the conviction. If the petition is well taken, then the necessary remedy is relief from both the direct and collateral consequences of the unconstitutional conviction. It follows that, because ongoing collateral consequences

---

[4]The Commonwealth was also the Appellant in *Gentry*.

are assumed to flow from an unconstitutional conviction,[5] and because the full relief implied by the writ is the elimination of all direct and collateral consequences, nullification of the conviction and expungement of the conviction from one's record are naturally and necessarily implicit in granting the writ. *Id.* at 696 ("As a practical, logical, and necessary matter, relief from the collateral consequences of an unconstitutionally obtained state criminal conviction effectively requires expungement of the conviction from the petitioner's record, and expungement of the record implies nullification of the unconstitutional conviction."). Indeed, as a general proposition, we know of no authority or plausible rationale indicating that states ever have a substantive justification to keep an unconstitutional conviction on an individual's record, and we find it telling that the Commonwealth has not cited a single case of a state successfully maintaining an unconstitutional conviction on the record of a petitioner seeking its removal. The only question is whether the state takes care of the ministerial function of expungement of its own accord or whether it insists that the habeas petitioner affirmatively request expungement.

Having thus reviewed *Gentry*, we believe that the majority of the Commonwealth's arguments in this case are plainly foreclosed by this prior precedent.

**A.      The district court retained jurisdiction to consider and grant Gall's motion.**

Just as it did in *Gentry*, the Commonwealth argues that the district court no longer has habeas jurisdiction because Gall has been released from the custody of the Kentucky prison. And just as it was in *Gentry*, the Commonwealth is incorrect.

In support of its argument, the Commonwealth cites *Gentry* for the proposition that "when a state meets the terms of the habeas court's condition, thereby avoiding the writ's actual issuance, the habeas court does not retain any further jurisdiction over the matter." (Appellant's Br. at 9 (citing *Gentry*, 456 F.3d at 692).) The Commonwealth

---

[5] As for the presence of collateral consequences stemming from a felony conviction, we explicitly stated, "[w]ith respect to injury, an essential element of a live controversy, the law does not require a habeas petitioner to prove by a preponderance of the evidence that she may face collateral consequences of her unconstitutional felony conviction, for the disabilities consequent to a felony conviction are legion, and patently obvious in many cases." *Id.* at 694.

proceeds to argue that it met the terms of Gall's conditional writ by releasing him to the state of Ohio, so the habeas court lost jurisdiction at that time. In relying upon this statement, the Commonwealth reveals a misreading of *Gentry*[6] and a fundamental misunderstanding of the concept of conditional writs of habeas corpus.

As we explained in *Gentry*, "the sole distinction between a conditional and an absolute grant of the writ of habeas corpus is that the former lies latent unless and until the state fails to perform the established condition, at which time the writ springs to life," and, thus, "[c]onditional grants of writs of habeas corpus are final orders . . . exactly like absolute grants, and they ordinarily and ideally operate automatically, that is, without the need for the district court to act further." 456 F.3d at 692. An absolute writ immediately provides the petitioner the right to relief from all direct and collateral consequences of the unconstitutional conviction. A conditional writ places a hold on that right pending the state's exercise of the option allowed by the conditional writ but, if the state does not exercise the option, the conditional writ converts into an absolute writ, complete with the right to relief from all direct and collateral consequences. *Id.* The federal court retains jurisdiction to afford that relief until the unconstitutional judgment is gone. *Edelman v. McKee*, 506 F.3d 409, 413 (6th Cir. 2009).

In *Gentry*, as in the case of most conditional writs, the option was for the state to retry the defendant. Because it failed to exercise that option, the writ became absolute.[7] The same is generally true in this case, the only difference being the nature of the condition placed on the writ. The option provided the Commonwealth by the conditional writ was to initiate involuntary commitment proceedings. When it failed to

---

[6]Indeed, the Commonwealth misreads *Gentry* in almost all relevant respects. That case is unequivocally contrary to the Commonwealth's position yet the Commonwealth continues to cite *Gentry* in support of its position. Thus, although this case is materially identical to *Gentry* in all respects save for one procedural issue, we cannot summarily affirm for the reasons stated in *Gentry* because the Commonwealth appears so fundamentally to misunderstand the reasons stated in *Gentry*.

[7]"As Gentry had been released from prison prior to the district court's order, the Commonwealth obviously had no duty under the district court's order to take any action with respect to her person. However, Gentry's status as a convicted felon apparently remained in force, as the Commonwealth did not nullify her conviction, and thus her January 2005 motion reasonably asked the court to enforce its order by making the conditional writ absolute. Therefore, we find that the district court retained jurisdiction to enforce its conditional grant of a writ of habeas corpus." 456 F.3d at 692.

exercise that option, the writ became absolute. Thus, as in *Gentry*, the federal court retains jurisdiction to effectuate and enforce the judgment encompassed by the now-absolute writ provided that all other requisites for federal jurisdiction, such as a live case or controversy, are also present.

**B.    Venue was proper in the United States District Court for the Eastern District of Kentucky.**

The Commonwealth next argues that, because Gall is currently incarcerated in Ohio and because the harm of the alleged collateral consequences would come to fruition in Ohio, he must seek vacation of the Kentucky conviction, if anywhere, in Ohio. However, as the district court correctly reasoned, Gall's request for vacation of the conviction is necessarily tied to his original petition for a writ of habeas corpus. Because venue was proper in the Eastern District of Kentucky for Gall to bring his habeas petition originally, 28 U.S.C. § 2241(d), so too is venue proper in that district to seek enforcement of that court's judgment on the petition.

**C.    Gall adequately alleges injury.**

The Commonwealth further argues that Gall has not pled with sufficient particularity that he is suffering any injury from the conviction's remaining on his record. Ongoing or future harm is a prerequisite for the existence of a case or controversy, a necessary requirement for the continued existence of federal habeas jurisdiction. *Gentry*, 456 F.3d at 693 (describing the evolution of the case or controversy requirement in habeas cases). Because Gall maintains that the conviction will affect his proceedings before the Ohio parole board, and because that hearing will not occur until at least the year 2021, the Commonwealth claims that he is not currently suffering any injury in fact. In this regard, the Commonwealth does not seem to dispute that the conviction will be relevant to the decision of the Ohio parole board and, instead, seems to argue simply that the alleged injury is too far in the future to give rise to the injury necessary to establish a case or controversy. This argument misunderstands the nature of the collateral consequences flowing from an unconstitutional felony conviction and elevates form over function.

First, we summarily found in *Gall IV* that Gall continued to suffer from collateral consequences in 2003 even though he had already been transferred to Ohio. *Gall IV*, 69 F. App'x at 253. Though we did not state explicitly what those collateral consequences were, we nevertheless found that they were present. Additionally, our decision in *Gall IV* necessarily did not alleviate those collateral consequences because we denied Gall any relief. As nothing has changed since our 2003 opinion, it would seem to follow that the collateral consequences still exist.

Even if we had not already decided the collateral consequences issue in *Gall IV*, we held in *Gentry* that collateral consequences are essentially presumed simply by virtue of the unconstitutional conviction's continued existence. *Gentry*, 456 F.3d 694-95. Thus, once a habeas petitioner provides the minimal showing of the existence of collateral consequences that we found to be required in *Gentry*, it becomes the state's burden to show conclusively that collateral consequences do not exist in a case of an unconstitutional conviction remaining on one's record. This makes perfect sense when viewed in context—a felony conviction is a scarlet letter placed upon an individual by the state that carries with it consequences that we have described as "legion" and "patently obvious." *Id.* at 694. Though it seems settled that the mere presence of the conviction is not, in and of itself, sufficient injury to give rise to a case or controversy, it is equally settled by *Gentry* that a petitioner need not show much more than the possibility of tangible collateral consequences for the burden to shift to the state to show that the consequences are not in fact possible. *See also Spencer v. Kenna*, 523 U.S. 1, 7 (1998) ("In recent decades, we have been willing to presume that a wrongful criminal conviction has continuing collateral consequences (or, what is effectively the same, to count collateral consequences that are remote and unlikely to occur).").

In this case, the Commonwealth has not proven to our satisfaction that the 1987 conviction will have no possible effect on the Ohio parole board's consideration.[8]

---

[8] It is on this point that our dissenting colleague primarily disagrees. The dissent contends that (1) this is not the typical case in which we may presume collateral consequences such as inability to vote or own a firearm because Gall continues to be a felon due to the Ohio convictions and (2) the Ohio Parole Board will still consider the strong evidence of Gall's guilt of murder, and almost certainly deny parole on that basis, even if there is no conviction to confirm that guilt, and so finds the case to be moot. The

Indeed, in its brief on appeal, the Commonwealth admits that, although it doubts that the 1987 conviction will impact the parole hearing due to the presence of other felony convictions, "it is impossible to know how this prior conviction will be handled until Gall comes up for parole." (Appellant's Br. at 16.) Furthermore, despite its expressed doubt as to the presence of collateral consequences, we note that the Commonwealth has mounted a vigorous defense over an issue that it would have us believe is meaningless. We are satisfied of the continued existence of collateral consequences sufficient to give rise to a case or controversy.

We also disagree with the notion implied in the Commonwealth's argument that Gall should simply wait until the day of his parole hearing gets closer to bring this challenge. As stated above, the Commonwealth has not shown that the conviction will be completely irrelevant to his parole hearing. We can find no compelling reason to delay addressing what will be an issue at some point, and we find it particularly ironic that the Commonwealth argues here that Gall should wait when, as we will see, the Commonwealth argues later that Gall has waited too long.

**D.     Gall has not waived or procedurally defaulted on his right to request nullification and expungement of the 1978 conviction.**

The Commonwealth contends that Gall waived or defaulted on his right to seek relief from the federal courts regarding expungement of the 1978 conviction. The basis for this argument is that Gall briefly raised the issue in the district court in connection with his motion to enforce in *Gall IV* and did not press the issue on appeal. This is easily the Commonwealth's strongest argument in this case as it is the only aspect of this case

---

dissent is certainly correct as to the first contention insofar as this is not a typical habeas case, and it argues persuasively (much more so, we note, than did the Commonwealth) as to the second contention. But nowhere in the authorities is it suggested that the presumption of collateral consequences applies only in typical habeas cases, so the presumption applies here. It is thus the Commonwealth's burden to establish conclusively that the collateral consequences will not come to pass, a task that the Commonwealth has not, and likely could not, accomplish. Furthermore, the dissent's reasoning—that because parole is unlikely under the unique facts of this case, there is a lack of injury sufficient to allow the anomalous result of an unconstitutional conviction remaining on one's record—could have dangerous implications even in a typical habeas case. It is possible that the next person seeking to have an unconstitutional conviction removed from her record is very unlikely ever to own a firearm, or had no prior record of ever voting. Surely we would not say that there is no ongoing injury just because this person was unlikely ever to exercise the rights that would be restored after the conviction were erased. It is for this very reason that the presumption of collateral consequences exists.

that is materially distinguishable from *Gentry*.  Indeed, as we have already mentioned, we can imagine no reasonable substantive argument in support of a state maintaining an unconstitutional conviction on an individual's record, so the only way for a state to obtain this result legally is to rely upon an individual litigant's procedural foot-faults. In this case, however, we do not find Gall's actions to be procedurally faulty, and certainly not sufficiently so as to justify the anomalous result of an unconstitutional conviction remaining on Gall's record.

We begin with the observation made above, and that we made in *Gentry*, that a conviction declared unconstitutional by a court of competent jurisdiction becomes a legal nullity at the moment that the judgment becomes final.  *See Gentry*, 456 F.3d at 697 ("[A] state acts *ultra vires* when it obtains a criminal conviction in violation of the United States Constitution, and *ultra vires* acts bear no legitimate force in a government under the law.  A public act without legitimate force is indistinct under the law from an act that never was, or an act that has been voided.").  And, as we stated above, the expungement of a conviction is a necessary consequence of that conviction having been declared unconstitutional, so the only remaining matter is the purely administrative step of erasing the conviction from the records.  Although the federal courts certainly have the *authority* to order a state to take this ministerial step, we do not see it as being the federal courts' *responsibility* to do so.  Ideally, the state would expunge the conviction of its own accord, but we recognize that bureaucracy often and innocently gets in the way of the ideal and efficient operation of government.  We therefore assume that the state courts would, upon request, follow up and order the removal of an unconstitutional conviction as a matter of course and without protestation.  Furthermore, we do not believe our thinking on this point to be novel or unreasonable.  If a state conviction is declared unconstitutional, the state, either by itself or by order of its courts, should expunge the conviction, and the federal courts should not be called upon to exercise the paternalistic function of directing the state to do that which it necessarily must do.

With these general principles in mind, we turn to Gall's case.  As we just said, it would not have been unreasonable for Gall to assume that the best place to seek to

have his state conviction expunged was the court of the state where he had been convicted. And, indeed, Gall did just that when, in 2004, he asked the Kentucky state court to vacate his conviction under state procedural rules. For their own reasons, the Commonwealth's courts declined to provide Gall the relief to which he is entitled, but we nevertheless do not fault Gall for directing his request to the state courts.

This leaves only the question whether Gall's failure to argue the issue of expungement on appeal in *Gall IV* precludes him from asking the federal courts to order expungement now. Viewing the pleadings at issue in *Gall IV*, it is clear that the primary issue was whether the Commonwealth had the authority to decline our invitation to initiate civil commitment proceedings and to opt instead to release Gall into the custody of Ohio. The vacation of Gall's 1978 conviction is not mentioned at all in the body of his motion to enforce our judgment. Instead, vacation of the conviction is only raised by language in Gall's proposed final judgment that he tendered along with his moving papers proclaiming that his conviction was unconstitutional and vacated.

We find it highly material that expungement of the conviction was not the subject of Gall's motion in 2001 and, instead, was only fleetingly mentioned in a proposed final judgment. Had expungement of the conviction been the actual subject of the motion, then Gall's failure to press the point on appeal might preclude him from raising the issue in the future. But the issue was only raised in a proposed order, which parties submit almost as an afterthought and which courts often disregard without ever even looking at them. Stated differently, that the district court declined to enter the proposed final judgment submitted by Gall does not necessarily imply that the court substantively considered whether to order expungement of the conviction and decided against it; it could just as easily mean that the court never looked at the proposed order because it prefers to prepare its own orders or because it was denying the relief that was the focus of the proceedings. Thus, vacation of the conviction appearing in the proposed order indicates, at most, a belief on Gall's part that the federal court had the power to nullify the conviction, a belief we later confirmed in *Gentry*. But, as we stated above, neither before nor after *Gentry* is it unreasonable for a litigant to believe that the best and most

direct way to have an unconstitutional state conviction expunged from one's record is to ask the state to do so.[9]

In sum, (1) because expungement of the conviction was not truly at issue in *Gall IV*, (2) because we find no indication that the district court substantively considered and rejected the suggestion in the proposed order to direct expungement of the conviction, and (3) because Gall quite reasonably believed that he could and should seek this relief from the state courts, we find no procedural fault in Gall's decision to not raise the issue on appeal in *Gall IV* and to opt instead to seek relief from the state courts.

**E.     Delay does not preclude Gall from now seeking expungement.**

In a related argument, the Commonwealth contends that the delay between Gall's motion to enforce in 2001 and his motion to enforce in 2008 bars his ability to seek expungement. The Commonwealth actually makes this argument twice, first under the guise of procedural waiver and later under a theory akin to equitable estoppel. We reject each argument.

As we noted above, we find it irreconcilable that the Commonwealth argues both that Gall has waited too long to seek relief and that he must wait until closer to his 2021 parole hearing to seek relief. As to the waiver-by-delay theory, we have already stated that Gall's litigation strategy of first seeking relief from the state courts, a process which took approximately four years, does not result in a waiver of his right to return to the federal courts. As to the estoppel-by-delay theory, the record is clear that Gall was not simply sitting on his hands all this time. He was first fighting the Commonwealth's decision to turn him over to the custody of Ohio and then spent four years in state court seeking expungement of the conviction. We therefore find that the passage of time does not, in this case, preclude or affect Gall's right to seek expungement of the conviction.

---

[9]At issue in *Gentry* was merely the question whether the federal courts have the authority and jurisdiction to order the state to expunge an unconstitutional conviction. In the course of answering those questions in the affirmative, we held that a petitioner need not "exhaust" his state court remedies seeking expungement before asking that the federal court order expungement. 456 F.3d at 695-96. That holding applies with equal force going the opposite direction—a petitioner may seek expungement from the state courts in the first instance without waiving his or her ability later to seek this relief from the federal court.

**F.      Neither comity nor the ends of justice bar expungement of the conviction.**

The Commonwealth argues that notions of comity and justice should prevent Gall from having the conviction expunged from his record. As to comity, the Commonwealth argues that the state court declined to exercise its equitable powers to vacate the conviction and that the federal courts should therefore defer to the state court's reasoning and conclusions. In its briefing, the Commonwealth correctly summarizes the Kentucky Court of Appeals's decision to deny Gall relief as resting on three main points: "deference to the federal courts [sic] failure to grant such relief in 2001, Gall's procedural default of this issue in his subsequent appeal, and the specific circumstances of Gall's case (and reversal) - including Gall's factual guilt for manslaughter." (Appellant's Br. at 24-25.) On the first point, as we have already noted, we do not understand the federal court in 2001 to have made a substantive decision on the expungement issue. Thus, as there was no federal decision on the issue to which the state should have deferred, we see no justification for completing the circle by deferring to the state court's deference to the federal court. On the second point, we have already rejected the procedural default argument and see no comity-based justification for deferring to what amounts to a state court's prediction of how a federal court will apply its own procedural rules for purposes of procedural default. On the third point, the fact that Gall may actually be guilty of manslaughter[10] is irrelevant because the fact remains that he has a legally void murder conviction on his record. There is no legal support for the notion that Gall should have a conviction on his record, so any conviction—regardless of its lack of constitutional justification—will do. Finally, separate and apart from the Kentucky court's rationales, we see no compelling justification to accord any comity- or federalism-based deference to the state court in this case when the central question is the scope and effect of a federal court's judgment.

---

[10]In *Gall III*, we noted that because the Commonwealth had failed to prove that Gall lacked extreme emotional disturbance at the time of the murder—an element of first-degree murder in Kentucky at the time of Gall's conviction—the most that could be said was that the Commonwealth had established all of the elements of the lesser offense of manslaughter. However, the statutory maximum sentence for manslaughter under Kentucky law was twenty years, and Gall had already served more than twenty years in prison by the time we issued our decision in *Gall III*. Thus, double jeopardy barred the Commonwealth from re-prosecuting Gall for manslaughter. 231 F.3d at 335-36. Accordingly, though Gall may be factually guilty of manslaughter, the Commonwealth has never convicted him of that crime.

The Commonwealth's final argument is that, given our statements in *Gall III* that Gall presents a continued risk of danger to society and should "never be allowed to become a free member of the society again," 231 F.3d at 336, we should not order expungement of the conviction when doing so may aid in Gall becoming a free member of society again. While this argument may have a superficial political or moral appeal, we nevertheless find it legally unpersuasive. The Commonwealth convicted Gall of murder in violation of the Constitution, and our system does not recognize the concept of a conviction being only a little bit unconstitutional. It either is or is not; there is no middle ground from which the state may continue in a Kafka-esque manner to hold certain aspects of the conviction over the petitioner's head.[11] Instead, the necessary and unescapable result of finding a conviction unconstitutional is that the conviction must be expunged and certainly may not be used in any manner that would be adverse or prejudicial to the petitioner. Although the Commonwealth is free to continue to disagree with our decision in 2000, the decision is final and binding and the Commonwealth has no authority to disregard it.

Furthermore, we explicitly gave the Commonwealth the opportunity to ensure that Gall never re-enters free society when we made provision for the Commonwealth to initiate involuntary commitment proceedings. The Commonwealth declined and instead transferred Gall to Ohio to serve prison time on different charges. This was the Commonwealth's decision, not ours and not Gall's, and we assume—indeed hope—that the Commonwealth made the decision with full understanding of the possibility of parole. Having made its decision, the Commonwealth cannot now complain of its consequences and certainly may not seek to impose unconstitutional effects on Gall in order to negate its perhaps ill-considered decision.

---

[11]In *The Trial*, Franz Kafka described a totalitarian state in which the judicial system was used to suppress freedom. One of the techniques used was non-final "acquittals." Kafka describes these "acquittals" as follows: "That is to say, when [the accused] is acquitted in this fashion the charge is lifted from [his] shoulders for the time being, but it continues to hover above [him] and can, as soon as an order comes from on high, be laid upon [him] again." Franz Kafka, *The Trial* 158 (Willa & Edwin Muir, trans., Alfred A. Knopf, rev. ed. 1992).

**IV.**

For the reasons set forth above, we **AFFIRM** the decision of the district court.

———————————

## DISSENT

———————————

JACK ZOUHARY, District Judge.   Under the peculiar circumstances of this case, the relief Gall seeks will be of no consequence, and this appeal is therefore moot.

The mootness doctrine derives from Article III's case-or-controversy requirement, which "subsists through all stages of federal judicial proceedings, trial and appellate." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (internal quotation omitted).  "The parties must continue to have a personal stake in the outcome of the lawsuit." *Id.*  For habeas suits, once a petitioner is no longer incarcerated, some other "concrete and continuing injury . . . -- some 'collateral consequence' of the conviction -- must exist if the suit is to be maintained." *Id.* (citing *Carafas v. LaVallee*, 391 U.S. 234, 237-38 (1968)).

There is a well-recognized presumption that wrongful criminal convictions carry collateral consequences.  *See, e.g.*, *Gentry v. Deuth*, 456 F.3d 687, 694-95 (6th Cir. 2006) ("[T]he disabilities consequent to a felony conviction are legion, and patently obvious in many cases.").  However, that presumption is rebuttable,[1] and determining whether continuing habeas jurisdiction exists requires examination of the circumstances of a given case.  *See, e.g.*, *Perez v. Greiner*, 296 F.3d 123, 125-26 (2d Cir. 2002) (finding "no material possibility that [the petitioner] will suffer collateral consequences on the basis of the challenged conviction" where the petitioner was already permanently ineligible to return to the United States because of his conviction on an unrelated drug charge).

————————————————

[1]One panel of the Ninth Circuit has held that the presumption of collateral consequences flowing from criminal convictions is irrebuttable, *Chacon v. Wood*, 36 F.3d 1459, 1463 (9th Cir. 1994), but this holding has been criticized even within the Ninth Circuit, *Larche v. Simons*, 53 F.3d 1068, 1070-71 (9th Cir. 1995), and no other circuit has signed on to the Ninth Circuit's position.

In the instant case, the majority would require the Commonwealth to "establish conclusively that the collateral consequences will not come to pass." Maj. Op. at 11, n.8.  This approach would make the presumption of collateral consequences effectively irrebuttable.  Overcoming the presumption will admittedly be rare, but the Commonwealth has done so here.

In this case, Gall is incarcerated in Ohio on convictions for rape, attempted rape, and aggravated burglary unrelated to the Kentucky murder conviction he wants wiped off the books. The normal presumption of collateral consequences -- quite appropriate in cases where the petitioner is actually released -- does not hold here. This is not a case where the petitioner is a free citizen who suffers certain and obvious disabilities as a result of his status as a convicted felon. Rather, Gall's freedom is restricted for reasons wholly apart from the unconstitutional Kentucky conviction, and the relief he currently seeks will do nothing to change his status as an Ohio prisoner.

The sole collateral consequence claimed by Gall is the possible effect of the Kentucky murder conviction on the decision of the Ohio Parole Board when he becomes eligible for parole eleven years from now. But parole decisions are not made simply by tallying the number of past convictions on a prisoner's record. The Ohio Parole Board has broad discretion to grant or deny parole "if in its judgment there is reasonable ground to believe that . . . paroling the prisoner would further the interests of justice and be consistent with the welfare and security of society." Ohio Rev. Code § 2967.03. In making this determination, the Parole Board "may investigate and examine . . . [the prisoner's] mental and moral qualities and characteristics . . . and any other matter[] affecting [the prisoner's] fitness to be at liberty without being a threat to society." *Id*. This statutory language (as well as common sense) allows the Parole Board to consider Gall's entire history -- both legal and factual -- in determining his suitability for parole. The Parole Board's broad discretion in this regard is reflected in the former Ohio Parole Guidelines, which specifically provided that "[i]f a conviction found to be [constitutionally] invalid is nonetheless supported by persuasive information that the offender committed the criminal act, this information may be considered as a negative indicant of parole prognosis[.]" OHIO PAROLE BOARD GUIDELINES MANUAL, Part C, § A.7 (3d ed. July 1, 2007).[2]

---

[2]*Available at* http://www.drc.ohio.gov/web/GuidelineManual07.pdf. On April 1, 2010, those Guidelines were rescinded by the Parole Board, in favor of an approach that gives the Board even more discretion to consider relevant facts in an individual prisoner's case. *See* OHIO PAROLE BOARD HANDBOOK, pp. 2-3 (April 1, 2010), *available at* http://www.drc.ohio.gov/web/Parole%20Board%20Handbook%204-1-2010%20(2).pdf.

Gall's history includes "overwhelming" evidence that he killed Lisa Jansen, *Gall III*, 231 F.3d at 281, as well as evidence of extreme emotional disturbance -- the reason this court found his conviction to be unconstitutional, *id.* at 336.  This court properly granted Gall habeas relief, while noting that it was "evident that Eugene Gall was the man who cut [Lisa Jansen's] life short," *id.* at 277, and that "he would be extremely dangerous to his fellow citizens if released," *id.* at 336.  It is naive to think the Parole Board would fail to consider the factual history of Gall's Kentucky case, *whether or not* his record contains an official notation of that conviction.  Indeed, the Parole Board would be remiss if it overlooked the strong evidence of violence and emotional instability underlying Gall's conviction.  And Gall cannot create a case or controversy simply by hoping the Board might fail to discover his background.  The Ohio Parole Board will have before it the facts underlying the Kentucky case and the published opinion in *Gall III* showing the murder conviction was invalid.

In short, Gall has no current dispute with the Commonwealth that would make any difference in his status as an Ohio inmate or otherwise.  The Ohio Parole Board can properly investigate and consider both the facts underlying Gall's Kentucky conviction and the ruling in *Gall III*.  Future discretionary decisions that depend on the underlying facts of a case, rather than the legal label placed on the outcome, do not support a finding of collateral consequences.  *Cf. Lane v. Williams*, 455 U.S. 624, 632-633 (1982) (voiding a record of a parole violation has little practical effect on discretionary decisions by employers or sentencing judges, who are influenced more by the conduct underlying the violation than by the official record of the violation).

As the above discussion suggests, the mootness analysis here is not controlled by *Gentry v. Deuth*.  In *Gentry*, unlike this case, the petitioner had been released from custody prior to her request for expungement.  456 F.3d at 694-95.  Noting the presumption of collateral consequences that applies in such circumstances, as well as the numerous Kentucky statutes that would affect her as a convicted felon, the *Gentry* court held that there was sufficient injury to avoid mootness.  *Id.*  In other words, her record of conviction had obvious consequences for her as a free citizen.  In this case, by

contrast, Gall faces no collateral consequences as a result of his conviction, as there is no practical possibility that expungement of the 1978 conviction will affect his release from the Ohio prison system.  Under Ohio law and the Parole Guidelines, the Parole Board has broad discretion to consider the Kentucky murder even if the conviction was invalid.

The majority glides over this critical analysis by simply adopting this court's *Gall IV* conclusion that Gall suffers from collateral consequences.  But that was then, this is now, and there is an important difference.  Gall had a clear stake in the outcome of *Gall IV*, unlike the present dispute.  His position in *Gall IV* was that the Commonwealth was *required* to institute civil commitment proceedings, and that his extradition and incarceration in Ohio were therefore inappropriate.  Incarceration and civil commitment are entirely distinct circumstances, and thus Gall had a concrete interest in litigating *Gall IV*.  But once this court ruled on that issue, Gall's dispute with the Commonwealth was over for all practical purposes.

Moreover, the majority should not assume this case matters simply because the Commonwealth has vigorously opposed Gall's request for expungement.  Regardless how loud or strident the protests from either party, federal courts must always inquire into the threshold issue of jurisdiction.  *See Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541 (1986) ("[E]very federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review, even though the parties are prepared to concede it.") (internal quotation omitted).  No matter the din, the relief Gall seeks here is of no consequence.

Because this case is moot, I would not reach the question of whether federal habeas law required the district court to order expungement of the 1978 conviction.  Nonetheless, a few comments are appropriate.

This case has a convoluted history stemming from varied efforts to balance the unconstitutionality of Gall's conviction with his potential danger to the public if released.  In *Gall III*, this court struck that balance by conditioning habeas relief on the Commonwealth initiating civil commitment proceedings.  The Commonwealth chose a

different path by extraditing Gall to Ohio -- an action this court did not anticipate but nevertheless found permissible in *Gall IV*.

In the current round of this dispute, the majority gives no thought to balancing Gall's entitlement to habeas relief with the potential danger of his release. Instead, the majority simply declares that a conviction "either is [constitutional] or is not; there is no middle ground from which a state may continue in a Kafka-esque manner to hold certain aspects of the conviction over the petitioner's head." Maj. Op. at 16. Such a rhetorical flourish obscures the difference between relief from Gall's unconstitutional conviction and consideration of his mental instability for purposes of parole. Indeed, the *Gall III* court was perfectly willing to hold Gall's mental instability over his head by expecting him to be civilly committed. A habeas court can and should consider public safety in order to fashion relief "as law and justice require." 28 U.S.C. § 2243.

Regardless, in this case, the question is academic, as ordering expungement will not make a bit of difference. The federal courts have had their say, several times over, and Gall's future is now in the hands of the Ohio Parole Board, which may properly consider Gall's actions in Kentucky. I would hold that this case is moot and, accordingly, respectfully dissent.