NOT RECOMMENDED FOR FULL TEXT PUBLICATION
File Name: 13a0061n.06

No. 11-5961

**FILED**
***Jan 14, 2013***
DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

DAVID PLEMONS,                                )
                                              )
    Petitioner-Appellant,                     )
                                              )
        v.                                )    ON APPEAL FROM THE UNITED
                                              )    STATES DISTRICT COURT FOR THE
JAMES FORTNER, Warden,                        )    MIDDLE DISTRICT OF TENNESSEE
                                              )
    Respondent-Appellee.                      )

Before:  SUTTON and STRANCH, Circuit Judges, and  STEEH, District Judge.[*]

STEEH, District Judge.  Tennessee state prisoner David Plemons, who is serving a 19-year sentence, appeals the district court's denial of his petition for *habeas corpus*.  Plemons claims (1) that the evidence was insufficient for his conviction of second-degree murder; and (2) that his trial counsel provided ineffective assistance of counsel by failing to use evidence of his mental illness. Finding that Plemons is not entitled to the writ, we affirm.

**I**.

In early September 2002 David Plemons killed his neighbor, Christopher Land, with a shotgun.  A portion of the facts surrounding that incident, as described in Plemons's post-conviction proceedings, follows:

> On the morning of September 4th, 2002, Deputy James Darnell, went to the victim's
> trailer in response to a dispatch call about a possible suicide attempt.  Deputy Darnell

---

[*]Honorable George Caram Steeh III, United States District Judge for the Eastern District of Michigan, sitting by designation.

saw the victim walking up the road from the direction of the [petitioner's] trailer, which was within one tenth of a mile of the victim's residence. The victim said he did not intend to harm himself but he had taken too much medication because he was mad at his mother. The victim agreed to go to the hospital in an ambulance with paramedics who had arrived. Deputy Darnell was called back to the hospital when advised that the victim had become "a little unruly" but eventually drove the victim back to his trailer in the early afternoon.

A little over fifteen minutes later, Deputy Darnell received a dispatch that the [petitioner] shot the victim at the [petitioner's] address. When Deputy Darnell arrived, the victim was dead with a visible gunshot wound on his face; lying on the ground with his feet on the steps to the [petitioner's] trailer. The [petitioner] walked from his trailer with his hands up and Deputy Darnell handcuffed the [petitioner].

> [The petitioner] told me he was sorry, but he didn't think he had [any] other choice, that [the victim] had come in his yard, slung his gate open, kicked his grill over, was cussing him and threatening to come in and whip his and his wife's asses....He was trying to get in the house.

There were "human teeth and skull fragments scattered on the floor, blood spots on the wall" inside the [petitioner's] trailer as well as a shotgun standing up against a chair and a shell lying on the floor.

The victim and the [petitioner] had been friends. Michelle Plemons, the [petitioner's] wife, testified that the victim came to their trailer almost every day, usually two or three times a day. She and the [petitioner] drove the victim wherever and whenever he needed to go anywhere.

The day before the shooting, she and the [petitioner] drove the victim to visit his mother in Franklin. On this trip the three each took one of the victim's Klonopin pills and the victim and the [petitioner] drank beer. Then they went to Nashville and bought cocaine. The victim injected some cocaine with a needle while the three drove home where all three finished the cocaine back at the [petitioner's] trailer. Later, they returned to Nashville and bought more cocaine and then returned home with the victim leaving around 4:30 a.m. at which time she and the [petitioner] went to bed. She awoke later that morning to the sound of the victim's voice on their answering machine cursing about why they weren't answering their phone. Thereafter, the victim called and spoke with the [petitioner]. She told investigators the [petitioner] was yelling and refused to drive the victim somewhere. When the

[petitioner] saw the victim through the window, the [petitioner] picked up the 12-gauge shotgun he kept next to the door.

*Plemons v. State*, No. M2007-00549-CCA-R3-PC, 2008 WL 5069193, at *1 (Tenn. Crim. App. Dec. 2, 2008) (quoting state post-conviction court's Memorandum Order).

It appears that as Plemons picked up his shotgun, Land approached the door of the trailer. Plemons fired the shotgun, killing Land in or near the doorway. Michelle Plemons placed a 911 call, following which Deputy Darnell and other officers arrived at the trailer. Plemons was arrested and an investigation ensued. Information gathered in that investigation, as well as testimony from trial and post-trial proceedings, is discussed as necessary in conjunction with the claims in this appeal.

Plemons had a jury trial. The state trial court instructed the jury on second-degree murder and three lesser-included offenses. The trial court also instructed the jury on the affirmative defenses of self-defense and defense of a third person. The jury convicted Plemons of second-degree murder, for which he was sentenced to 19 years of incarceration. Plemons's direct appeal and petition for post-conviction relief in state court were unsuccessful.[1] Plemons filed a *pro se* petition for a writ of *habeas corpus* in the United States District Court for the Middle District of Tennessee at Nashville in August 2009. Counsel was appointed to represent Plemons, and Plemons's petition was then amended. Cross motions for summary judgment were filed, and the district court granted the

---

[1]Following Plemons's unsuccessful direct appeal, in which he was represented by his trial counsel, he filed a *pro se* petition for post-conviction relief. The post-conviction court appointed counsel for Plemons. Newly appointed counsel then filed two amended petitions for post-conviction relief. The trial court held an evidentiary hearing, at which Plemons, his sister, father, and trial counsel testified. The post-conviction court denied the petition, and Plemons appealed. The Tennessee Court of Criminal Appeals affirmed that decision. *Plemons*, 2008 WL 5069193.

state's motion, dismissing the *habeas* action with prejudice. Plemons was granted a certificate of

appealability by the district court on the claims presented in this action, and he filed his timely appeal

with this court in August 2011.

**II**.

Plemons's *habeas* petition, filed in 2009, is governed by the Antiterrorism and Effective

Death Penalty Act of 1996 (AEDPA). Therefore, we may not grant the writ unless the adjudication

on the merits in state court either

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme Court
> of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state
> court arrives at a conclusion opposite to that reached by this Court on a question of
> law or if the state court decides a case differently than this Court has on a set of
> materially indistinguishable facts. Under the "unreasonable application" clause, a
> federal habeas court may grant the writ if the state court identifies the correct
> governing legal principle from this Court's decisions but unreasonably applies that
> principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). As the Supreme Court has more recently

instructed, § 2254(d) "preserves authority to issue the writ in cases where there is no possibility

fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.

It goes no farther." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).

This *habeas* case presents two issues for our review, addressed in turn, below. We review a district court's legal conclusions and determinations of mixed questions of law and fact *de novo*. *Gall v. Scroggy*, 603 F.3d 346, 351 (6th Cir. 2010). We review the district court's findings of fact for clear error. *Titlow v. Burt*, 680 F.3d 577, 585-86 (6th Cir. 2012).

### A. Sufficiency of the Evidence

Plemons claims that there was insufficient evidence presented at trial to prove that he committed second-degree murder. The Fourteenth Amendment's due process clause allows a criminal conviction only "upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [the defendant] is charged." *Jackson v. Virginia*, 443 U.S. 307, 315 (1979). Under *Jackson*, the standard for a claim of insufficient evidence is whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. Our question on *habeas* review is whether the "state court was 'objectively unreasonable' in concluding that a rational trier of fact could find [the defendant] guilty beyond a reasonable doubt." *Stewart v. Wolfenbarger*, 595 F.3d 647, 653 (6th Cir. 2010).

As it applies to this case, second-degree murder in Tennessee is defined as "[a] knowing killing of another." Tenn. Code Ann. § 39-13-210(a)(1). At the time of the murder, the right to use self-defense was codified in Tennessee as follows:

> (a) A person is justified in threatening or using force against another person when, and to the degree, the person reasonably believes the force is immediately necessary to protect against the other's use or attempted use of unlawful force. The person must have a reasonable belief that there is an imminent danger of death or serious bodily injury. The danger creating the belief of imminent death or serious bodily

injury must be real, or honestly believed to be real at the time, and must be founded upon reasonable grounds. There is no duty to retreat before a person threatens or uses force.

(b) Any person using force intended or likely to cause death or serious bodily injury within the person's own residence is presumed to have held a reasonable fear of imminent peril of death or serious bodily injury to self, family or a member of the household when that force is used against another person, not a member of the family or household, who unlawfully and forcibly enters or has unlawfully and forcibly entered the residence, and the person using the force knew or had reason to believe that an unlawful and forcible entry occurred.

Tenn. Code Ann. § 39-11-611(a), (b) (2002). Under another section in that title, the state has the burden of proving beyond a reasonable doubt "[t]he negation of any defense to an offense defined in this title if admissible evidence is introduced supporting the defense." Tenn. Code Ann. § 39-11-201(a)(3).

Plemons highlights evidence presented at trial to show that Land was "volatile . . . manic depressive, addicted to drugs, and suicidal" in an effort to bolster his argument that he was responding to a serious threat posed by Land. (Appellant's Brf. at 14 (citing *State v. Plemons*, No. M2004-00460-CCA-R3-CD, 2005 WL 468306, *10-11 (Tenn. Crim. App. Feb. 24, 2005))). In contrast, the state emphasizes that at Plemons's trial, evidence was presented that Land had threatened to tell the police that the petitioner was growing marijuana.[2] Additionally, the state points

---

[2]Plemons claims that there was no evidence to show that Plemons was aware of that threat at the time he shot Land. The court notes the Tennessee Court of Criminal Appeals' description of this evidence, offered by Land's mother: "she next heard from the victim the morning of the shooting, and she could hear the Defendant in the background during that call. Barbara Land testified that the victim said he was going to 'turn [the Defendant] in for growing marijuana.'" *Plemons*, 2005 WL 468306, at *10. Thus, it appears possible that Plemons was aware of this threat.

to proofs that the victim was unarmed, that Plemons himself opened the door, and that Plemons shot Land in the face at close range.

Plemons emphasizes Tennessee's statutory requirement that the state prove beyond a reasonable doubt that he was not engaged in self-defense when he shot Land, and argues that the state did not disprove his theory of self-defense here. He also cites Tennessee caselaw, such as *Hudgens v. State*, 166 Tenn. 231 (1933), and *State v. Clifton*, 880 S.W.2d 737, 742 (Tenn. Crim. App. 1994), in asserting that a lack of self-defense has been "judicially included" as an element of the crime of second-degree murder in Tennessee. Plemons's arguments and authorities do not impact our analysis.

We are convinced that the state courts reasonably applied *Jackson* to this case. In *Jackson*, it is clearly stated that the test for sufficiency of the evidence extends to each of the elements of the crime:

> ...[A]n essential of the due process guaranteed by the Fourteenth Amendment [is] that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof–defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense.

*Jackson*, 443 U.S. at 316.

In the case at bar, the Tennessee Court of Criminal Appeals thoroughly considered the evidence in light of the elements of second-degree murder, and noted the jury's rejection of the defense presented by Plemons, determining that:

> [i]n the case under submission, the evidence produced at trial showed that the victim and the Defendant were close friends who spent almost every day together, often at the Defendant's trailer. The Defendant's wife testified that the victim was always welcome at their home. The victim threatened to tell the police that the Defendant

> was growing marijuana. The victim came to the Defendant's trailer unarmed, the Defendant opened the door for the victim, and the Defendant shot him in the face. This evidence, viewed in a light most favorable to the state, is legally sufficient to support the Defendant's conviction for second degree murder. Although the Defendant claims he acted in self-defense, the jury was properly instructed on this issue and it rejected this defense. This issue is without merit.

*Plemons*, 2005 WL 468306, at \*15. This decision was by no means an "objectively unreasonable" application of *Jackson*. *See Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

### B. Ineffective Assistance Claim

Under the Sixth Amendment, defendants are guaranteed that "at trial and on direct . . . appeal every criminal defendant will have access to a lawyer to assist with his or her defense." *Nichols v. United States*, 563 F.3d 240, 248 (6th Cir. 2009). This guarantee is for the "'*effective* assistance of counsel.'" *Id*. (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970) (emphasis added)). Plemons asserts in this matter that he was not given effective assistance of counsel at his trial because his counsel did not pursue a theory of an "imperfect self-defense." Plemons contends that the admission of evidence of his mental condition, along with an argument for a lesser offense such as manslaughter, would likely have produced a different result.[3]

The threshold issue of procedural default is asserted by the state. Federal habeas relief is barred unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). While Plemons did not assert the *specific* ineffective assistance ground he

---

[3]Plemons stated at the post-conviction proceedings that he informed his trial counsel that he was disabled, suffering from mental conditions including paranoid schizophrenia.

asserts here in state court, he contends the Tennessee courts' comprehensive resolution of his ineffective assistance claim allows for our review of his current claim, citing various cases from other circuits, such as *Jones v. Dretke*, 375 F.3d 352, 354 (5th Cir. 2004).  The state, on the other hand, asserts the claim was not "fairly presented" in the state courts and cannot be subject to collateral review at this juncture.  *See Wagner v. Smith*, 581 F.3d 410, 414-15 (6th Cir. 2009).

A close examination of the decision by the Tennessee Court of Criminal Appeals shows that the state courts thoroughly considered the record, including interaction between trial counsel and Plemons, and information concerning Plemons's mental condition.  Specifically, the Tennessee Court of Criminal Appeals found that the "petitioner admitted that he had gone to Centerstone, a mental health facility, and acknowledged that he was found to be competent to stand trial, that an insanity defense could not be supported, and that there did not appear to be a basis for a claim of diminished capacity." *Plemons*, 2008 WL 5069193, at * 3.  That decision also included the post-conviction court's description of trial counsel's testimony, that he and Plemons "discussed pursuing self-defense, as well as a defense based upon the petitioner's mental disorders." *Id*. at *4.

Although Plemons did not specifically target trial counsel's failure to pursue an imperfect self-defense theory, the state courts were presented with a broader claim of ineffective assistance. In resolving that claim, the state courts discussed trial counsel's consideration of Plemons's mental conditions in making strategic trial decisions with his client.  While it remains arguable that

Plemons's *habeas* claim has been procedurally defaulted, it is unnecessary to resolve this issue because the claim fails on its merits.[4]

In assessing the merits of Plemons's Sixth Amendment *habeas* claim, we find that its adjudication in the state courts was neither contrary to nor an unreasonable application of Supreme Court precedent under 28 U.S.C. § 2254(d). The clearly established federal law for this claim is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). A claim of ineffective assistance under *Strickland* requires that a defendant establish that his or her counsel was deficient, and that he or she was prejudiced by that deficiency. *Id*. at 687. It is not enough to "show that the errors had some conceivable effect on the outcome of the proceeding." *Id*. at 693. Rather, the defendant must establish that the errors were "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. As with the claim under *Jackson*, discussed above, the question posed in this *habeas* proceeding is whether the state court's application of the *Strickland* standard was unreasonable. *See Robins v. Fortner*, 698 F.3d 317, 329 (6th Cir. 2012).

Plemons asserts that he was deprived of an imperfect self-defense claim due to trial counsel's misunderstanding of the law. He asserts that, had his counsel used evidence that Plemons suffered from mental illnesses that made him "overreact to a belligerent home invasion," and presented such an argument, the jurors would have had reason to choose the offense of manslaughter. Plemons contends this would have "greatly aided" in his defense.

---

[4]Because we are not ruling on the basis of procedural default, we also decline to address the merits of Plemons's motion to remand, made under the equitable rule established in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), which is hereby dismissed.

Plemons cites various points in the transcript from the post-conviction evidentiary hearing as support for this argument, arguing that "his trial counsel believed that the evidence of mental illness could not be used to complement Plemons's defense of legitimate self-defense." However, we note that the transcript itself brings such an assertion into question. In the state's questioning of trial counsel on this issue, the following exchange occurred:

Q. So you had two potential defenses; correct?
A. That's correct.
Q. Go with self defense, mental health defense, or both together riding two horses; correct?
A. You can ride two horses.
Q. I am talking about the possibilities.
A. Yeah, you could ride one or the other or a combination of the two.
Q. Did you consider any other possibilities other than possibly a plea bargain?
A. No.
Q. Now, did you consider diminished capacity, not a defense, but did you consider it?
A. Considered it.
Q. Did you consider insanity at the time of the defense?
A. We considered it briefly but based upon the records that we had on Mr. Plemons and the evaluation that was done at Centerstone by the doctor, it would be an extremely uphill battle to try to ride an insanity defense.
Q. Did you discuss this possibility of a mental–I realize diminished capacity is not a defense in Tennessee. Using that generic term, did you discuss this with your client?
A. We discussed it with him about using a mental–any type of mental defense for lack of a better word, as to the charge of second degree murder only requires a knowing killing versus a premeditated first degree. It also clouds up the issue if you are riding self defense. You don't want to come in to the jury trying to say I did this in self defense but I am also crazy. That wouldn't, in my opinion, be a very viable defense to the jury.
Q. Did you tell your client, Look, we are not going to use the mental health defense. You don't have a decision about this. We are not going to use it. We are going to use self defense.
    Is that the way you put it to him?
A. No.
Q. Or did he have any say so in the matter and if so what was his say so?

A. I explained to Mr. Plemons and his family like I do all of my clients, the decision is his. All I can do is gather the facts, the good facts and bad facts and indifferent facts. Tell them what the options are and the benefit of each path they want to do and then tell them they have to make a decision.

Q. What decision did your client make?

A. Decision to go to trial and he wanted to go on self defense.

(Dist. Ct. Doc. # 28-2 at pp. 132-34.) While Plemons's trial counsel did not call using the two defenses together an "imperfect self-defense," his testimony was that he considered using the evidence of mental illness in combination with his defense of self-defense.[5]

The Tennessee Court of Criminal Appeals carefully reviewed the record made by the post-conviction court. That record contained evidence showing that counsel was fully aware of Plemons's mental conditions and why he decided with his client to pursue a theory of self-defense without suggesting that such action was the result of mental illness. The state court reasonably determined that this choice was not deficient. *See Schoenberger v. Russell*, 290 F.3d 831, 836 (6th Cir. 2002). As the district court described, the trial court's jury instructions in Plemons's trial included the offenses of voluntary manslaughter, reckless homicide, and criminally negligent homicide, along with instructions on self-defense and the defense of a third person. The jury, under the circumstances presented, rejected the defense theories as well as the alternative, lesser offenses. The

---

[5]Plemons's contentions about the existence of an "imperfect self-defense" in Tennessee rely largely on an unpublished Tennessee Court of Criminal Appeals decision, *State v. Horton*, C.C.A. No. 18, 1988 WL 9421 (Tenn. Crim. App. Feb. 10, 1988). In *Horton*, on direct appeal, the defendant claimed error in the trial court's failure to instruct the jury that an imperfect self-defense "reduces the charge of murder in the first degree to involuntary manslaughter." *Id*. at *4 (internal quotation marks omitted). *Horton* does not support Plemons's arguments, however, as the Tennessee appeals court determined that the jury had been properly instructed, that an "imperfect self-defense" was only a "label," and that it was up to the jury to "determine all questions regarding provocation." *Id*.

No. 11-5961
*Plemons v. Fortner*

Tennessee Court of Criminal Appeals' decision rejecting Plemons's ineffective assistance claim was neither contrary to nor an unreasonable application of *Strickland*.

The judgment of the district court is **AFFIRMED**.